231 So.2d 97

Hassie Mae **WESTBROOK**, as Admrx., etc.

v.

Homer **GIBBS** et al.

1 Div. 425.

Supreme Court of Alabama.

Jan. 22, 1970.

Diamond & Lattof, Mobile, for appellant.

Hand, Arendall, Bedsole, Greaves & Johnston and Jerry A. McDowell, Foreman & Brown, Moore, Moore, Downing & Layden, Mobile, for appellees.

LIVINGSTON, Chief Justice.

This is an appeal from a verdict and judgment in favor of each of the defendants below, Homer Gibbs and Louisville and Nashville Railroad Company, a corporation, in the Circuit Court of Mobile County, Alabama.

Hassie Mae Westbrook, as administratrix of the estate of Elizabeth Moten Mickles, deceased, brought suit against Homer Gibbs and Louisville and Nashville Railroad Company, a corporation, for causing the death of her intestate. Mickles met her death as the result of an accident involving an automobile being operated at the time of the accident by Homer Gibbs and a train of the defendant railroad company. The accident occurred near Grand Bay, in Mobile County, Alabama.

Defendant Homer Gibbs will hereinafter be referred to as "Gibbs," and defendant Louisiville and Nashville Railroad Company, a corporation, as "L. and N. Railroad."

The following facts are undisputed: On December 5, 1964, Wilmer White, James Alexander and Homer Gibbs left the village of Plateau, Alabama, near Mobile, and drove to the home of James Alexander in Moss Point, Mississippi, a distance of some thirty to thirty-five miles. The three men made the trip in White's two-door Pontiac Bonneville automobile, with White driving from Plateau to Moss Point. Upon arriving in Moss Point, the men unloaded from the automobile certain items which they carried there for Alexander. While at Alexander's home in Moss Point, Elizabeth Moten Mickles and Etta Ree Robinson came by Alexander's home and asked Alexander, whom they knew, if they might ride back to Mobile. The three men, after discussing the request, consented. White, who had worked the preceding night without sleep, asked Gibbs if he would drive the automobile back to Mobile, to which Gibbs agreed. When they left Moss Point, Gibbs was driving and Mickles was sitting in the front seat of the automobile between Gibbs and Alexander. White, the owner of the automobile, was sitting on the back seat directly behind Gibbs, and Etta Ree Robinson was sitting on the back seat next to White. White fell asleep soon after they left Moss Point and continued to sleep up until the time of the accident. As they approached Grand Bay, they were driving in an easterly direction on Highway 90, which runs generally east and west. At the point at which the accident occurred,

Highway 90 is parallel and in close proximity to the tracks of the L. and N. Railroad. Approximately one mile from Grand Bay, at what is known as Seager Road, Mickles requested that they make a rest stop. Gibbs turned off Highway 90 onto Seager Road, crossed the tracks of the defendant L. and N. Railroad, and continued for a distance of approximately fifty yards before stopping the automobile. Mickles and Alexander got out of the automobile to, and did, relieve themselves. They then got back into the automobile, occupying the same positions as they had occupied prior to the rest stop. Gibbs then turned the automobile around and, in crossing the tracks again, said automobile was struck by a locomotive of the L. and N. Railroad. Alexander and Mickles were killed.

The complaint contained two counts, each of which was directed against both of the defendants: one, a simple negligence count, and the other predicated on the willful or wanton misconduct of the defendants, Count One, and Count Two (as amended), are as follows:

### "COUNT ONE

"Plaintiff, who sues as Administratrix of the Estate of Elizabeth Moten Mickles, deceased, claims of the Defendants FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS as damages, for that heretofore, on, to-wit, the fifth day of December, 1964, the agent, servant or employee of the Defendant Louisville and Nashville Railroad Company, a corporation, while acting within the line and scope of his employment, was running or operating a locomotive engine or train upon or along Defendant's tracks at a point or place approximately one mile West of Grand Bay, Mobile County, Alabama, where Seager Road (also known as Alabama Highway 188) a public street or road in Mobile County, Alabama, crosses the railroad tracks of said Defendant, and your Plaintiff alleges that Defendant Homer Gibbs was operating an automobile upon Seager Road in a Southerly direction at a place or point where it crosses the railroad tracks of the Defendant Louisville and Nashville Railroad Company, and your Plaintiff alleges that the two Defendants so negligently operated the locomotive engine or train and the automobile that they, with great force and violence, collided, and as a proximate result and consequence of said negligence, the Plaintiff's intestate, who was then and there a passenger on the 'share the expense basis' of the automobile being operated by the Defendant Homer Gibbs, was thereby killed; the Plaintiff alleges that her said intestate, Elizabeth Moten Mickles, was killed as a proximate result of the negligence of the Defendants herein, hence this suit."

### "COUNT TWO

"Plaintiff, who sues as Administratrix of the Estate of Elizabeth Moten Mickles, deceased, claims of the Defendants FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS as damages, for that heretofore, on, to-wit, the fifth day of December, 1964, the agent, servant or employee of the Defendant Louisville and Nashville Railroad Company, a corporation, while acting within the line and scope of his employment, was running or operating a locomotive engine or train upon or along Defendant's tracks at a point or place approximately one mile West of Grand Bay, Mobile County, Alabama, where Seager Road (also known as Alabama Highway 188), a public street or road in Mobile County, Alabama, crosses the railroad tracks of said Defendant, and your Plaintiff alleges that Defendant Homer Gibbs was operating an automobile upon Seager Road in a Southerly direction at the place or point where it crosses the railroad tracks of the Defendant Louisville and Nashville Railroad Company, and your Plaintiff alleges that the two Defendants so wantonly operated the locomotive engine or train and the automobile that they, with great force and violence, collided, and as a proximate result and consequence of said wantonness the Plaintiff's intestate, who was then and

there a passenger of the automobile being operated by the Defendant Homer Gibbs, was thereby wantonly killed; the Plaintiff alleges that her said intestate, Elizabeth Moten Mickles, was killed as a proximate result of the wantonness of the Defendants herein, hence this suit."

Included in the pleas filed by the defendants to the complaint, as amended, was the following, filed by defendant Gibbs:

"Comes now Homer Gibbs, one of the Defendants in the above styled cause, separately and severally, and for additional Answer to the Plaintiff's Complaint and to each Count thereof, separately and severally, sets down and assigns the following separate and several additional Plea, separately and severally:

"7. That the accident or mishap referred to in the Plaintiff's Complaint occurred in the State of Alabama; and that in the State of Alabama there was, at the time of the said accident or mishap, in full force and effect, what is known and described as a guest statute, as follows to-wit:

" 'The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said vehicle.'

"That at the time and place of said accident or mishap, the plaintiff was a guest passenger in the motor vehicle being driven by the Defendant, Homer Gibbs; that plaintiff would be subject to the terms and conditions of the said guest statute."

■ Count Two of the complaint, as amended, did not allege that the plaintiff's intestate, Elizabeth Moten Mickles, was riding as a guest in the vehicle being operated by Gibbs at the time of the accident; instead, it was alleged in Count Two that plaintiff's intestate was riding in the vehicle as a passenger. On its face, the complaint does not show that Count Two, as amended, is based upon the Alabama guest statute, Tit. 36, § 95, Code 1940 (Recompiled in 1958). It was, therefore, incumbent upon defendant Gibbs to plead the guest statute. Penton v. Favors, 262 Ala. 262, 78 So.2d 278. This he did, as set out supra. No demurrer was interposed to said plea, nor is any assignment of error on this appeal directed toward said plea. However, we would be remiss in our duty were we not to attempt to clarify the use of the terms "passenger" and "guest," as those terms are construed in this state. In Wagnon v. Patterson, 260 Ala. 297, 303, 70 So.2d 244, we quoted with approval from Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87, 10 A.L.R.2d 1342, in which the terms "passenger" and "guest" are unmistakably defined, to wit:

"The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a *guest*; but if his carriage tends to promote the mutual interest of both himself and driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, *the rider is a passenger and not a guest*. (Citing cases)." (Emphasis added)

■ Supreme Court Rule 1, Tit. 7, Appendix, Code 1940 (Recompiled in 1958), provides that no question is reserved

for decision by this court which is not embraced in a due assignment of error. Southern Benefit Life Ins. Co. v. Holmes, 265 Ala. 48, 89 So.2d 530; Halle v. Brooks, 209 Ala. 486, 96 So. 341; Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639. We have set out the above merely to illustrate the difficulties encountered in reaching the errors duly assigned and argued. It is well-settled in this state that parties may frame their own issues and thereby immaterial matters may be made material for that trial. Austin v. Clark, 247 Ala. 560, 25 So.2d 415; Riddle v. Dorough, 279 Ala. 527, 187 So.2d 568.

At the conclusion of the plaintiff's testimony, defendant Gibbs rested; he requested and was given the affirmative charge as to both counts of the complaint, as amended. After presenting its case, defendant L. and N. Railroad was given the affirmative charge as to the count alleging willful or wanton misconduct. The jury returned a verdict in favor of defendant L. and N. Railroad as to the negligence count. There was no improper joinder in Count One under allegations that the plaintiff's intestate was injured by the negligence of the defendants, nor of Count Two under allegations that the plaintiff's intestate was injured by the willful or wanton misconduct of the defendants. It is settled in this state that where several defendants are joined in an action, the plaintiff is entitled to go to the jury as to that defendant against whom he has made out his case, although a directed verdict may be ordered as to all the others. Tit. 7, § 139, Code 1940 (Recompiled in 1958); Roberts Construction Co. v. Henry, 265 Ala. 608, 93 So.2d 498.

There are five assignments of error on this appeal, to wit:

"1. The Court erred in giving at the request of the Appellee Louisville and Nashville Railroad Company the following written charge:

" 'The Court charges the jury that a locomotive is required to be equipped with only one headlight of not less than 1,500 candle power brilliancy, and if you are reasonably satisfied that the locomotive in question on this night was so equipped, and that the one headlight was burning, then you may not predicate any liability on the railroad for failure to have proper lights on the locomotive.'

"2. The Court erred in giving at the request of the Appellee Homer Gibbs written charge No. 1 as follows:

" 'The Court charges you that under the evidence in this case you should return a verdict for the defendant, Homer Gibbs.'

"3. The Court erred in instructing the jury that there was no evidence of wantonness or wanton misconduct on the part of Homer Gibbs.

"4. The Court erred in charging the jury that under the evidence in this case, the jury should return a verdict for the defendant, Homer Gibbs.

"5. The Court erred in entering an order on December 2, 1966, denying the Appellant's motion filed November 22, 1966, to set aside the verdict of the Jury and the judgment of the Court and to grant the Appellant a new trial."

First turning our attention to assignment of error 1, that portion of Tit. 48, § 182, Code 1940 (Recompiled in 1958) pertinent to our consideration is as follows:

"All companies, corporations, lessees, owners, operators or receivers of any railroad or railway company operating a railroad or railway in whole or in part in this state, shall equip, maintain and use upon every locomotive being operated in road service in this state in the nighttime, a power headlight of not less than fifteen hundred candle power brilliancy, measured with the aid of a suitable reflector. * * *"

Appellant attaches great significance to the fact that the "Mars" light, an oscillat-

ing light mounted on the front of some locomotive engines, particularly the one in question here, was not functioning immediately prior to the accident. The testimony tended to show that the "Mars" light on the locomotive here had stopped functioning shortly before the accident; that the fireman had entered the nose of the locomotive engine and was connecting, or had connected, a detached cable when the impact occurred; and that the "Mars" light was functioning properly at the time the locomotive engine came to a stop after the accident. Testimony that the headlight on the locomotive engine was burning at all times up to the time of the accident was uncontradicted.

Appellant's argument in support of assignment of error 1 is to the effect that a railroad crossing over a public road may present such conditions of special hazard as to require a railroad company to provide certain warning lights on the front of its locomotives (in addition to those required by statute) to warn motorists using such public road of the approach of a locomotive engine. Appellant cites no cases, nor do we find any, which support such a position.

The rule is established in this state that, in the absence of a statute or special conditions of hazard to motorists, there is no duty on a railroad to provide special warnings of the *existence of a railroad crossing*. Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262; Callaway v. Adams, 252 Ala. 136, 40 So.2d 73; Louisville and Nashville Railroad Company v. Byrd, 5 Cir., 298 F.2d 586; Louisville and Nashville Railroad Company v. Williams, 5 Cir., 370 F.2d 839. A careful consideration of these cases, and the application of the stated principle therein, leads us to the conclusion that said principle is directed to the duty of a railroad company to provide special warnings where, due to environmental conditions, the presence of railway cars blocking a public road crossing or the presence of railroad tracks across a public road crossing would not be discoverable by a motorist on the public road exercising due care. The cases do not show that a railroad company is charged with the duty of providing special warning devices on a locomotive engine, in addition to those required by statute, to warn motorists of the approach of a locomotive engine where the crossing is one posing special conditions of hazard to motorists. We are unwilling to extend the application of the principle of law involved to the facts of this case. There is no error on the part of the trial court in giving at the request of the appellee L. and N. Railroad the charge made the basis of assignment of error 1.

Assignments of error 2 and 4 are argued together; appellant adopts this argument in support of assignment of error 3. These assignments of error are based upon the lower court's determination that the evidence did not provide that scintilla necessary for the submission to the jury of the question of willful or wanton misconduct on the part of defendant Gibbs.

That which constitutes wanton misconduct depends upon the facts presented in each particular case. Lewis v. Zell, 279 Ala. 33, 181 So.2d 101; Cooper v. Watts, 280 Ala. 236, 191 So.2d 519. This Court, in Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448, defined wantonness as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Does the evidence in the case at bar, when considered in the light most favorable to the plaintiff, show that the defendant Gibbs proceeded to cross the tracks of the defendant L. and N. Railroad with a *knowledge and consciousness* that injury might likely or probably result from such act or omission?

Appellant relies heavily on the testimony of investigating officers who questioned Gibbs at the hospital on the night of the

accident. Both officers testified that Gibbs stated at that time that the windows on the automobile were "fogged up" at the time of the accident. At the time Gibbs allegedly made the statement, he was undergoing treatment for injuries which he sustained in the accident. Gibbs in his testimony stated that he did not talk to any investigating officers at the hospital on the night of the accident, and that the windows were not "fogged up." The evidence presented at the time defendant Gibbs rested tended to show that defendant Gibbs was aware of the presence of the tracks of the L. and N. Railroad; that he stopped before crossing said tracks after leaving the rest stop; that he looked and could see for a distance of approximately one mile in the direction from which the locomotive approached; and that he proceeded across the tracks only after ascertaining that such action was free from peril. That which we said in Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277, is applicable here:

"In our opinion, a case of simple negligence was made by the testimony, and this issue was properly submitted to the jury. It is also our opinion that the evidence did not support an inference of wanton conduct, that is, that appellee, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some duty which produced injury to appellant and to his vehicle. These essential elements of wantonness were left to conjecture. Zemczonek v. McElroy, 264 Ala. 258, 86 So.2d 824; Dean v. Adams, 249 Ala. 319, 30 So.2d 903; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Smith v. Roland, 243 Ala. 400, 10 So.2d 367; Mi-Lady Cleaners v. McDaniel, 235 Ala. 469, 179 So. 908, 116 A.L.R. 639. See Kingry v. McCardle, 266 Ala. 533, 98 So.2d 44." Id., at 21, 122 So.2d at 279.

Assignments of error 2, 3 and 4 are without merit.

Assignment of error 5 charges error on the part of the trial court in refusing to set aside the verdict and granting appellant a new trial.

 The refusal of a trial judge to grant a new trial strengthens the presumption in favor of the correctness of the verdict. Louisville and Nashville Railroad Co. v. Tucker, 262 Ala. 570, 80 So.2d 288. We find no such error as requires the reversal of the verdict and judgment of the lower court.

Affirmed.

LAWSON, MERRILL, HARWOOD and MADDOX, JJ., concur.