These appeals involve actions for personal injuries arising out of a collision between a motorcycle and an automobile in the City of Mobile, Alabama. Plaintiffs, Robert E. Wilson and his wife Mary (Havelin) Wilson, sued Kevin Cyril Cuevas in the Circuit Court for Mobile County, alleging counts in negligence and wantonness. Plaintiffs' count alleging wanton conduct did not survive defendant's renewed motion for a directed verdict at the close of all evidence. The trial court allowed the negligence count to be submitted to the jury. It returned a defendant's verdict, and the trial court entered judgment for the defendant. Plaintiffs appealed.
Three issues, and the questions posed thereby, are properly presented for our review. The first is: Did the trial court err to reversal by granting the motion to dismiss plaintiffs' count alleging wantonness? The second is: Did the trial court err to reversal by giving defendant's jury instruction number four concerning plaintiffs' alleged failure to stop for a red traffic light? The third is: Did the trial court err to reversal by giving defendant's jury instruction number eleven dealing with plaintiff's alleged excessive speed? We answer all in the negative, and we affirm the judgment of the trial court.
On March 18, 1975, at approximately 6:45 p.m., plaintiffs were traveling westerly on Spring Hill Avenue in the City of Mobile. They were riding a 750 cc BMW motorcycle driven by Mr. Wilson. Spring Hill Avenue is a four-lane road running east and west. Plaintiffs approached Louiselle Street, a two-lane road running north and south, which intersects with Spring Hill Avenue. Defendant was driving an automobile, with two passengers, proceeding easterly on Spring Hill Avenue and also approaching Louiselle Street. Apparently, Spring Hill Avenue has left-turn lanes in both directions of travel at the Louiselle Street intersection.
Victor Allen McSwain, called by plaintiffs, testified that he held the position of traffic engineer for the City of Mobile. He explained the operation of the traffic lights at that intersection.
 Q. All right. Well, Mr. McSwain, what was the phasing of the lights for the traffic at that corner at that time?
 A. It's what's called a three-phase signal operation. The sequence would be Spring Hill eastbound green and a left turn arrow for eastbound to turn north on Louiselle would come on. Everything else would be red. The left turn arrow would stay on a predetermined amount of time and following a clearance interval the westbound green would come on, run at the same time as eastbound. The eastbound green would stay on for the through movement, stay green. Following that movement, and following a yellow clearance period, the side street or Louiselle Street would get the green. Following Louiselle green it would go through the same cycle.
McSwain stated that the speed limit for Springhill Avenue was 35 miles per hour.
Mr. Wilson testified there was a "normal" flow of traffic traveling at 25-30 miles per hour, and that he was moving with that flow of traffic. He explained that he kept 60-80 feet behind the first car in front of him because motorcycles require a longer distance in which to stop. Mr. Wilson stated that as he approached the intersection, he was in the inside lane next to the median and that he had a green light. Upon entering the intersection, Mrs. Wilson told him that the light was changing, and she shouted to warn him of defendant's automobile. Wilson testified that he next saw defendant's car suddenly pull out in front of him and come to a stop. The collision occurred with plaintiffs' striking the right front fender of defendant's automobile. Defendant had attempted to turn left from the left-turn lane to travel northerly on Louiselle Street.
Arguing that the trial court erred by granting a directed verdict against their *Page 64 
count alleging wantonness, plaintiffs call our attention to a statement allegedly made by defendant after the collision. Mrs. Wilson testified that defendant was apologetic and upset:
 [Defendant] said he was very sorry, that he did not even see us, that he did notice this car in the outside lane starting to slow down so he knew that the light was undoubtedly changing and he was going to make his turn onto Louiselle before Louiselle's traffic started moving out, because he was in a hurry to get to the hospital to see his father who was in the intensive care. And his aunt, along with this, I mean she was saying more or less the same thing, that they didn't see us, and I believe she said his father was her brother.
Plaintiffs contend that defendant was trying to "beat" the traffic, and that his act constituted wanton conduct. Alternatively, they contend that defendant saw them in a position of peril, but turned in front of them, nevertheless. Either way, plaintiffs insist, they were entitled to have the jury decide if defendant's act rose to the level of wanton conduct.
The standard of review for a party's request for a directed verdict is well established.
 Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opponent. When a reasonable inference may be drawn, which is adverse to the party requesting the directed verdict, the directed verdict is properly refused.
Alabama Power Company v. Robinson, 404 So.2d 22 at 24 (Ala. 1981); Alford v. City of Gadsden, 349 So.2d 1132 at 1135 (Ala. 1979); Alabama Power Company v. Taylor, 293 Ala. 484,306 So.2d 236 (1975).
A directed verdict can be granted only where:
 [T]he facts are such that all reasonable men must draw the same conclusion from them. . . . Unless the evidence is free from doubt or adverse inference, the question is for the jury. Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594.
. . .
 In civil cases, a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint. . . .
Alabama Power Company v. Robinson, at 25, quoting from Turnerv. Peoples Bank of Pell City, 378 So.2d 706 at 709 (Ala. 1979);Draughon v. General Finance Credit Corp., 362 So.2d 880 (Ala. 1978).
Concerning wantonness, this court has stated the following:
 Each case is bound by its material facts; that before it can be said an act or failure to act is wantonly done or omitted and an injury resulting thereby is wantonly inflicted, it must be shown that the party charged with committing the wrong or omitting to reasonably act in that behalf, had knowledge of the danger, present or impending, to the other party or parties so situated, and being conscious (from his knowledge of existing conditions and impending danger) an injury would likely or probably result from his conduct or omission to act, with reckless indifference to consequences, consciously and intentionally did the wrongful act, or omitted to do or discharge the known duty in the premises to avert such danger, and which produced the injurious result. Birmingham Electric Co. v. Turner, 241 Ala. 66, 1 So.2d 299; Alabama Power Co. v. Dunlap, 240 Ala. 568, 200 So. 617; Feore v. Trammell, 212 Ala. 325, 102 So. 529; Shepard v. Louisville N.R. Co., 200 Ala. 524, 76 So. 850.
Simon v. Goodman, 244 Ala. 422 at 424, 13 So.2d 679 at 680 (1943).
Our review of the facts, in a light most favorable to plaintiffs, leads us to conclude that plaintiffs' case amounted to no more than a showing of negligence; the question of negligence was properly submitted to the jury for its resolution. Although defendant's act, under other circumstances, could constitute wanton conduct, *Page 65 
here it does not. The facts do not allow us to reasonably infer that defendant acted with "reckless indifference" to the consequences, had knowledge of the danger present, or otherwise came within the definition of wantonness. Where a case for wanton conduct shows no more than mere negligence, a directed verdict to the count alleging wantonness is properly given.Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97 (1970); Taylorv. Thompson, 271 Ala. 18, 122 So.2d 277 (1960). Therefore, we find that the trial court properly granted a directed verdict as to plaintiffs' count alleging wanton conduct.
Next, we consider plaintiffs' argument that the trial court erred by giving defendant's charge number four:
 The Court charges the jury that if you are reasonably satisfied from the evidence in this case that the sole proximate cause of the Plaintiffs' injuries was the negligent failure of Robert E. Wilson to stop his motor vehicle at the intersection of Louiselle Street with Spring Hill Avenue as the law requires when the traffic signal is red, then your verdict should be for the Defendant.
To the above charge, defendant objected in the following manner:
 MR. SALIBA: This would be instruction number four, Defendant's charge number four and Defendant's charge number eleven. Judge, they're both predicated upon charging the jury that if there was a speed in excess of a reasonable speed or a safe speed, that they could not rule for the plaintiff. The Defendant's own testimony limits the speed of the Plaintiff as he entered the intersection to 35 miles per hour.
 THE COURT: Bill, that's not for me to determine. That's for the jury to determine.
 MR. SALIBA: Well, there is no evidence putting his speed as he went into or entered the — through the intersection at any speed greater than the posted speed limit which was 35 miles an hour.
 THE COURT: Well, I differ with you, but again that's for the jury, not me.
 MR. SALIBA: Now, there is some evidence, Judge, I would agree, before he got to the intersection he was going 70, 50 and then 35 miles an hour, but they then put his speed going into the intersection at no greater than 35 miles an hour.
THE COURT: All right, what else?
MR. SALIBA: That's all. That's four and eleven.
Plaintiffs voiced the same objection to defendant's charges number four and eleven. The ground of plaintiffs' objection is that there was no evidence of excessive speed by plaintiff to allow the charges to be given. Rule 51, Alabama Rules of Civil Procedure, provides the procedure for preserving error on jury instructions. Generally, specific grounds for an objection must be given. Explaining the reasons for the rule, this court said:
 The purpose for requiring statement of grounds for an objection or exception to an oral charge is said to be to allow the trial court an opportunity to correct the instructions and to avoid the waste of time and money from reversals resulting from oversight, technical omissions, or remediable mistakes. Hosey v. Seibels Group, South Carolina Insurance Company, 363 So.2d 751 (Ala. 1978); Feazell v. Campbell, 358 So.2d 1017 (Ala. 1978); Gardner v. Dorsey, 331 So.2d 634
(Ala. 1976); Pitts v. Hulsey, 344 So.2d 175
(Ala.Civ.App. 1977). The general rule to preserve error in jury instructions for appellate review is that in addition to objecting to the charge, the complaining party must have stated adequately specific grounds as a basis for the objection. Pitts v. Hulsey, supra; Great Northern Land and Cattle Inc. v. Firestone Tire Rubber Company, 337 So.2d 1323
(Ala.Civ.App. 1976). While the general rule has been adhered to in specific instances, objections have been allowed without stated grounds where the objection which was made was specific, adequately informed the trial court of its error, and afforded an opportunity for that court to correct the error. Gardner v. Dorsey, supra; Pitts v. Hulsey, supra. *Page 66 
Nelms v. Allied Mills Co., 387 So.2d 152 at 154 (Ala. 1980).
Plaintiffs failed to articulate a clear objection to defendant's charge number four. That charge addresses the issue of plaintiffs' allegedly having proceeded through a red traffic light. The trial court charged the jury on the issue of plaintiffs' alleged excessive speed when it gave defendant's charge number eleven. Nevertheless, even assuming that plaintiffs' objection addressed a purported lack of evidence to allow the charge to be given, that still does not help plaintiffs. Although the testimony was conflicting, there was evidence from which the jury could infer that plaintiffs proceeded through a red traffic light, thereby proximately causing the collision.
Plaintiffs also argue other grounds, not stated in their objection at trial, in support of their contention that the trial court erred in giving defendant's charge number four. These grounds we need not consider. Grounds not asserted at the time objection is made to the charge do not allow the trial court an opportunity to correct possible error, and, therefore, do not preserve error for our review. Nelms v. Allied MillsCo., 387 So.2d at 154-5.
The trial court also gave defendant's charge number eleven. In essence, that charge instructed the jury that Mr. Wilson had a duty to drive at a reasonable and proper speed, under the circumstances existing, and that if the collision was the proximate result of his violation of that rule, a verdict could not be returned in his favor. The ground for plaintiffs' objection, noted above, is that no evidence was adduced at trial to allow the charge to be given. We disagree. There was sufficient evidence creating a jury question as to plaintiff's speed. Indeed, that evidence is even noted in plaintiffs' own objection: "Now, there is some evidence, Judge, I would agree, before he got to the intersection [Mr. Wilson] was going 70, 50 and then 35 miles an hour. . . ." The trial court did not err in giving the instruction.
Again, plaintiffs argue additional grounds, not stated in their objection at trial, in their argument against the propriety of defendant's charge number eleven. For the same reason stated in our discussion of defendant's charge number four, we decline to consider those additional grounds.
Lastly, plaintiffs argue that the trial court erred in refusing plaintiffs' charge number one. We find nowhere in the record where plaintiffs preserved error as to this charge. Nothing, therefore, is presented for our review.
For all of the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.