Barry Argo appeals from a judgment entered against him and in favor of Charles Walston in which Walston was awarded $25,000 in damages on claims relating to a defectively installed pond. We reverse and remand.
In May 2000, Argo offered to construct a one-acre lake with a dam on Walston's property for $5,000. Walston agreed, with his only stipulations being that Argo "do a good job" and that Argo not cut down all of the trees on the north end of Walston's property. Argo worked on the lake through June and completed it in July 2000. While he was working, Argo complained to Walston that he was losing money on the job and that he did not know how he was going to pay the bills for it; however, Argo did not ask Walston for more money to complete the project. Nonetheless, Walston testified that, in response to Argo's complaints, he gave Argo another $2,500 "out of the kindness of my heart." After Argo completed the project, Walston stocked the lake with fish at a cost of $295, and he placed pea gravel in the lake at a cost of $336.44.
Soon after the lake was completed, a heavy rain fell on Walston's property and the lake overflowed its dam, washing out Walston's neighbor's road. Walston called Argo and complained; Argo sent workers to the site to "level off" the dirt on the road. However, it rained again some days later and the lake overflowed its dam for a second time, again washing out the neighbor's road. On this occasion, Argo refused to come fix the road or to repair the problems with the lake, despite requests from Walston. Argo never visited the site again.
Walston filed suit against Argo on April 24, 2001, alleging breach of contract and fraud. Specifically, Walston requested $25,000 in damages based on his allegation that Argo breached the contract by failing to construct the lake in a workmanlike manner. Walston also requested $200,000 in compensatory and punitive damages based on his allegation that Argo misrepresented that he "was skilled at the construction of lakes."
Walston was the only witness to testify at the trial that was held on May 9, 2002. He described the continuing problems with the lake overflowing and introduced into evidence several pictures of his property and his neighbor's property showing the damage done from the flooding.[1] Over a hearsay objection from Argo's counsel, Walston testified that he had been told by experts that it would cost from $10,000 to $15,000 to fix the lake. The trial court permitted the testimony, noting that Walston had the engineer who gave Walston this estimate present at the trial to testify if necessary. The trial court then recommended that the parties settle the dispute and adjourned the proceedings for the parties to work out an agreement. *Page 182 
On September 5, 2002, the trial court issued an order rendering judgment in favor of Walston and awarding him $25,000. Argo appeals the judgment as to the amount of damages awarded.
"Where evidence is presented ore tenus, as in this instance, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong." Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990).
Argo contends that there was not sufficient competent evidence to support the judgment of the trial court with regard to the damages awarded. Citing Fidelity Guaranty Insurance Co. v.Sturdivant, 622 So.2d 1279 (Ala. 1993), for the principle that there must be "`evidence to justify a finding of the amount for which judgment was rendered,'" 622 So.2d at 1280 (quotingHolcombe Bowden v. Reynolds, 200 Ala. 190, 190, 75 So. 938,938 (1917) (reversing a damages award made by a trial court sitting without a jury)), Argo argues that there was no basis for an award of $25,000 in damages. Argo points out that Walston paid only $5,000 for the construction of the lake, and the only evidence presented concerning how much it would cost to repair the lake was Walston's testimony that it would cost $10,000 to $15,000. Argo points out that he objected to this testimony on the basis of hearsay and on the basis that Walston was not qualified to render an opinion on the subject. Thus, Argo contends that the trial court's judgment should be reversed because it is not supported by competent evidence.[2]
At the trial, when Argo's counsel objected to Walston's testifying to how much it would cost to fix the lake, the trial court answered:
 "I'm going to let him go ahead and answer. I want to go ahead and finish this up. I'm going to be quite candid with you. What I've seen here — and I understand you had a bad rain, but you've got a lake that's not built right. Now, that's the bottom line from the pictures and from the testimony. And I really think you ought to get together and try to settle it.
 "I think Mr. Argo has assets at his disposal that he can remedy this a whole lot quicker than I can render a judgment against him and order somebody else to pay it. Now, if y'all want to take a few minutes and discuss this a little bit more, you know, that's fine. But my background, my raising with fish ponds and that kind of stuff, you've got to take that drainage into consideration and apparently — a lot of times it's easy to build a pond when everything is real dry and not realize the lay of the land.
 "So I really think y'all need to get together. I'll give you about ten minutes if y'all want to work this out."
After Walston answered the question, Argo's counsel again objected to the court allowing such hearsay testimony. The trial court responded:
 "Well, [Walston will] have an expert come in here in a minute. But like I said, if you've got the equipment, you can fix it a whole lot cheaper than that, let me put it that way. But if you have to go hire somebody to do it, that's *Page 183 
keeping with what it costs to fix something like this if you've got to go hire it to be done."
The court then took a recess for the parties to discuss whether an agreement could be reached and it did not reconvene. There is no settlement agreement in the record, but the trial court's judgment reads, in its entirety:
 "This court after hearing in this cause on the 9th of May 2002 was notified that an agreement had been reached. The defendant having failed to carry out his obligation under the agreement, it is [o]rdered that judgment is rendered in favor of Plaintiff, Charles W. Walston, and against the Defendant, Barry Argo, in the amount of $25,000, together with the cost therein.
"Done this the 5th day of September 2002."
In answering his counsel's question regarding what it would cost to fix the lake, Walston specifically stated: "Well, from what I gather from the sources that have been out there and looked at it, they say at least 10, $15,000." In other words, Walston based his cost estimate on what others had related to him, which is hearsay as defined by Rule 801, Ala. R. Evid.,[3] and does not fit within any exception to the hearsay rule. See Rules 803 and 804, Ala. R. Evid. As the trial court's comments ruling on Argo's objections to this testimony indicate, Walston had an expert present at trial to testify regarding the amount it would cost to fix the lake, but the expert never testified. Instead, it seems that the trial court based the amount of the damages awarded on Walston's hearsay testimony, which should have been excluded, and on the trial court's personal knowledge about fishing ponds, which is also not a permissible basis for a judgment.[4]
Walston contends that the damages award was supported by the evidence if punitive damages for the fraud claim are factored into the trial court's judgment. However, no evidence of intentional fraud such as would justify an award of punitive damages was presented at trial. Walston merely testified to the fact that he contracted with Argo to construct the lake and that the lake was defective because it overflowed the dam when it rained. To justify an award of punitive damages, one must prove "by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." § 6-11-20(a), Ala. Code 1975. As used in § 6-11-20(a), "fraud" means "[a]n intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." §6-11-20(b)(1), Ala. Code 1975. The evidence presented in this case regarding Argo's promise that he would construct a lake for $5,000, and the subsequent result that the lake was defective, does not satisfy the requirements imposed by § 6-11-20. Thus, the amount of the trial court's damages *Page 184 
award cannot be justified by Walston's fraud claim.
"The plaintiff has the burden of producing sufficient evidence of his loss to allow the fact-finder to calculate the damages without operating from guesswork." Aldridge v. Dolbeer,567 So.2d 1267, 1270 (Ala. 1990). Here, the trial court considered testimony that, had it been competent, would have helped the plaintiff satisfy his burden. In admitting that testimony, the court acknowledged the availability of an expert witness to testify concerning the same matter, but it thereafter adjourned the proceedings for the parties to work out a settlement. The judgment eventually entered by the trial court based on the record developed at the hearing must be reversed as to the amount of damages awarded because of our holding today that the trial court erred in considering the plaintiff's incompetent testimony. We therefore remand the cause for a new trial as to the issue of damages. See Aldridge v. Dolbeer, 567 So.2d 1267.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs specially.
[1] No evidence was introduced, and no request was made for any damages, relating to the cost of repairing Walston's or his neighbor's property, with the exception of the cost of correcting the problems that existed with the lake itself.
[2] Citing Garrett v. Sun Plaza Development Co.,580 So.2d 1317 (Ala. 1991), and other cases, for the proposition that damages for breach of a contract should return the injured party to the position he would have been in had the contract been fully performed, but not in a better position, Argo also contends that the $25,000 award is excessive, even based on the $10,000 to $15,000 repair cost testified to by Walston. We pretermit discussion of this issue.
[3] Except as provided in Rule 801(d), Ala. R. Evid., hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid.
[4] "It is well established that a court may take judicial notice of matters of common knowledge without suggestion of counsel and without proof thereof. However, a court may not take judicial notice of a fact which might be disputed by competent evidence." Jim Walter Res., Inc. v. Hall, 576 So.2d 673, 675
(Ala.Civ.App. 1991) (citation omitted)).