MOORE, Judge.
 

 Vaughn Frederick and his wife, Mildred Frederick, appeal from a judgment as a matter of law on their claim of wantonness; they also assert that the trial court erred in allowing certain evidence in the trial against Donald Wallis, with whom they had been involved in an automobile accident. We affirm.
 

 Facts
 

 In July 2001, the Fredericks were driving a 2001 Buick LeSabre automobile south on Highway 59 in Foley. Highway 59 is a five-lane road with two lanes of traffic running southbound and northbound, respectively, and a center turn lane. Wallis was driving his automobile north on Highway 59 when he entered the center turn lane to make a left-hand turn across the two southbound lanes toward the entrance to a Wal-Mart store on the west side of Highway 59.
 

 As the Fredericks approached the area of the Wal-Mart store, they were traveling in the outside southbound lane of Highway 59. The traffic in the inside southbound lane, adjacent to the center turning lane, had backed up due to a traffic light ahead. One of the drivers in the inside southbound lane left a gap in the stopped traffic to allow Wallis to turn across that lane. Wallis testified that he “inched out” a little bit so that he could see if there was any oncoming traffic in the outside southbound lane and that he looked to the right and did not see the Fredericks’ vehicle approaching. The Fredericks testified that Wallis “shot out” from the gap right in front of their vehicle and that Vaughn, who was driving the Fredericks’ vehicle, did not have time to hit the brakes. David Vosloh, who was in a vehicle directly behind Wallis’s vehicle in the center turn lane at the time of the accident, testified that Wallis had been at a dead stop in the
 
 *906
 
 center turn lane and that, once there was a break in traffic, Wallis did not ease out, but, instead, just “went ahead and went.” The Fredericks’ vehicle collided with Wallis’s truck in the outside southbound lane. At trial, Wallis admitted fault for the accident.
 

 Vaughn testified that he had sustained an injury to his thumb. Mildred claimed that the accident caused a disfiguring injury from two broken ribs. The Fredericks did not introduce any medical evidence to support their personal-injury claims. As for property damage, Vaughn testified that the vehicle he was driving, which he and Mildred jointly owned, was, according to the “Blue Book,” a publication generally recognized as setting values for used vehicles, worth $26,300 at the time of the accident and that, in his opinion, the vehicle was worth only $5,000 afterwards, the price at which he sold the automobile to a third party after the accident.
 

 In their complaint filed on July 2, 2003, the Fredericks sought compensatory and punitive damages from Wallis in the amount of at least $250,000 based on his negligent and wanton actions in causing the accident. The original trial resulted in a mistrial. At the retrial on March 12, 2007, the trial court granted a judgment as a matter of law (“JML”) in favor of Wallis as to the Fredericks’ wantonness claim.
 
 See
 
 Rule 50(a)(1), Ala. R. Civ. P. The jury returned a verdict in favor of the Freder-icks and awarded damages in the amount of $4,000 each to Mildred and Vaughn. On March 16, 2007, the trial court entered a judgment pursuant to the jury’s verdict. The Fredericks timely appealed.
 

 Discussion
 

 The Fredericks first argue that the trial court erred in granting a JML on their wantonness claim in favor of Wallis.
 

 “When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML.
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Id.
 
 Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).”
 

 Waddell & Reed, Inc. v. United Investors Life Ins. Co.,
 
 875 So.2d 1143, 1152 (Ala. 2003).
 

 “What constitutes wantonness depends on the facts presented in each particular case.
 
 Pate v. Sunset Funeral Home,
 
 465 So.2d 347, 349 (Ala.1984);
 
 Westbrook v. Gibbs,
 
 285 Ala. 223, 231 So.2d 97 (1970). For a party to be found guilty of wantonness, it must be shown that with reckless indifference to the consequences of his or her action, the party consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omis
 
 *907
 
 sion caused the injury.
 
 Brown v. Turner,
 
 497 So.2d 1119 (Ala.1986).”
 

 Kennedy v. Jack Smith Enters., Inc.,
 
 619 So.2d 1326, 1328 (Ala.1993).
 

 “To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone.
 
 Joseph v. Staggs,
 
 519 So.2d 952, 954 (Ala.1988). Also, it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is ‘conscious’ that injury will likely or probably result from his actions.
 
 Id.”
 

 Ex parte Essary,
 
 992 So.2d 5, 9 (Ala.2007).
 

 Wallis cites
 
 Wilson v. Cuevas,
 
 420 So.2d 62 (Ala.1982), in support of his argument that the trial court properly granted his motion for a JML on the issue of wantonness. In
 
 Wilson,
 
 the defendant attempted to turn left in front of the plaintiffs motorcycle as a traffic light was changing and the two vehicles collided. 420 So.2d at 63. The plaintiff contended that the defendant was trying to “beat” the traffic and that his act constituted wantonness.
 
 Id.
 
 at 64. The trial court granted a directed verdict (now a JML,
 
 see
 
 Rule 50, Ala. R. Civ. P.) on the plaintiffs wantonness count; on appeal, the Alabama Supreme Court affirmed, determining that the defendant’s act, in that case, did not constitute wanton conduct.
 
 Id.
 
 at 64-65.
 

 Wallis also cites
 
 Ex parte Essary, stipra,
 
 in support of his argument that the Fred-ericks’ wantonness claim was properly disposed of by the trial court. In
 
 Essary,
 
 the defendant made a “rolling stop” at a stop sign before he proceeded through an intersection and then collided with the plaintiffs’ vehicle, which was not required to stop at the intersection. 992 So.2d at 8. The defendant testified that he had looked both ways before entering the intersection and did not see the plaintiffs’ vehicle approaching; one of the plaintiffs, however, stated that the defendant was attempting to “shoot the gap” between his vehicle and a vehicle in front of him. 992 So.2d at 8. The trial court entered a summary judgment in favor of the defendant on the plaintiffs’ claims of negligence, wantonness, and trespass. 992 So.2d at 8. On appeal, this court reversed the trial court’s judgment, holding, among other things, that the plaintiffs had established a genuine issue of material fact regarding whether the defendant had acted wantonly.
 
 Burrell v. Essary,
 
 992 So.2d 1, 5 (Ala.Civ. App.2006). The Alabama Supreme Court granted certiorari review and reversed the part of this court’s opinion that reversed the trial court’s judgment on the wantonness claim and rendered a judgment in favor of the defendant on that claim.
 
 Ex parte Essary,
 
 992 So.2d at 13. In its discussion of the wantonness issue, the Alabama Supreme Court stated, in pertinent part:
 

 “The evidence, viewed, as it must be, in a light most favorable to the plaintiffs, the nonmovants, shows that Es-sary slowed to a ‘rolling stop’ at the intersection and attempted to cross the intersection between two moving vehicles. The plaintiffs’ characterization of Essary’s attempt to cross the intersection between two vehicles as ‘accelerating’ after a ‘rolling stop’ to ‘shoot the gap’ does not elevate Essary’s actual conduct — as observed by the plaintiffs— from the negligent failure to exercise good judgment to a wanton act constituting reckless indifference to a known danger likely to inflict injury. At best, the plaintiffs’ evidence shows that Essary, like the defendant in
 
 Wilson [v. Cuevas,
 
 420 So.2d 62 (Ala.1982) ], made an error in judgment when he attempted to ‘beat the traffic’ or ‘shoot the gap’ by passing between Banks’s vehicle and
 
 *908
 
 Burrell’s vehicle.
 
 Wilson
 
 holds that such conduct is not wanton.
 

 “Although the evidence indicates that Essary knowingly entered the intersection, there is nothing from which the trier of fact could infer that, in moving his vehicle through the intersection, Es-sary’s state of mind contained the requisite consciousness, awareness, or perception that
 
 injury was likely
 
 to, or
 
 would probably, result.
 
 Indeed, the risk of injury to Essary himself was as real as any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior. See
 
 Griffin Lumber Co. v. Harper,
 
 252 Ala. 93, 95, 39 So.2d 399, 401 (1949) (‘There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death.
 
 Atlantic Coast Line R. Co. v. Wetherington,
 
 245 Ala. 313(9), 16 So.2d 720 [(1944)].’).
 

 “The facts here presented do not establish any basis from which to conclude that Essary was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. Nor is the act as described by Burrell so inherently reckless that we might otherwise impute to Es-sary a depravity consistent with disregard of instincts of safety and self-preservation. We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that Essary was conscious that injury would likely or probably result from his actions.”
 

 992 So.2d at 12.
 

 In
 
 Ex parte Anderson,
 
 682 So.2d 467 (Ala.1996), the defendant attempted to make a left-hand turn across a lane of oncoming traffic although her vision of approaching traffic was partially blocked by an automobile. 682 So.2d at 468. The Alabama Supreme Court determined that there was not substantial evidence of wanton conduct, i.e., indicating that the defendant had acted “ “with knowledge of danger, or with consciousness, that the doing [of the act would] ... likely result in injury.’ ” 682 So.2d at 470 (quoting
 
 Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.,
 
 510 So.2d 142, 145 (Ala.1987)).
 

 In accordance with
 
 Wilson, Essary,
 
 and
 
 Anderson,
 
 we conclude that the trial court did not err in entering a JML on the Fredericks’ wantonness claim. In both
 
 Wilson
 
 and
 
 Essary,
 
 there was evidence indicating that the defendants in those cases had attempted to “beat the traffic” or “shoot the gap” between two cars, indicating that they had actual knowledge of the danger involved, whereas Wallis, like the defendant in
 
 Anderson,
 
 turned across a lane of oncoming traffic although his vision was obstructed. Viewing the facts in a light most favorable to the Fredericks, Wallis turned into the outside southbound lane once there was a gap in the traffic of the inside southbound lane, although his vision was impaired, like the driver in
 
 Anderson.
 
 As in
 
 Essary,
 
 the potential of injury to Wallis was as real as that to the driver or passengers of any oncoming vehicle and there was no evidence presented indicating that Wallis’s judgment was impaired by alcohol or any other source. Thus, based on
 
 Essary
 
 and
 
 Anderson,
 
 we conclude that the trial court’s entry of a
 
 *909
 
 JML on the Fredericks’ wantonness claim was proper.
 

 The Fredericks next argue that the jury’s verdict was not based on any competent evidence. During Wallis’s attorney’s cross-examination of Vaughn, the following ensued:
 

 “Q. Okay. Was there — an estimate was done to have [the vehicle] repaired, wasn’t there?
 

 “A. Right.
 

 “Q. And that was about eight thousand dollars, wasn’t it?
 

 “[FREDERICKS’ COUNSEL]: Objection, Your Honor, there’s no foundation for this.
 

 “[WALLIS’S COUNSEL]: I simply asked him the question, Your Honor. THE COURT: Overruled.
 

 “[FREDERICKS’ COUNSEL]: Also, hearsay, Judge.
 

 “THE COURT: Well, you’re asking him of his personal knowledge?
 

 “[WALLIS’S COUNSEL]: Yes, sir.
 

 “THE COURT: Base your answer on what you know yourself, Mr. Frederick, and not what someone told you, that would be hearsay.
 

 “A: I wouldn’t have the faintest idea.” Wallis’s attorney then produced a copy of the estimate to refresh Vaughn’s recollection. The following exchange then took place:
 

 “Q: Go ahead and take a look at this. This was an estimate compiled by Hodge’s Auto Collision; is that correct?
 

 “[FREDERICKS’ COUNSEL]: Same objection, Judge.
 

 “[WALLIS’S COUNSEL]: I’m just asking him to read the document. “THE COURT: Overruled.
 

 “Q: All right. This right here, the amount to have this work completed was eight thousand three hundred and forty-four dollars and thirty-eight cents. Does that refresh your recollection?
 

 “[FREDERICKS’ COUNSEL]: Judge, this is hearsay. He’s not an expert.
 

 “THE COURT: Are you going to call this witness?
 

 “[WALLIS’S COUNSEL]: No, Your Honor, and I’m not going to offer this document into evidence. I’m just using it to refresh his recollection as to the estimate that was done on the vehicle.
 

 “A: If I’m going to read one figure off this thing, I’m going to read them all. Every single figure.
 

 “[FREDERICKS’ COUNSEL]: Excuse me. My objection, you can’t back door it in that way.
 

 “THE COURT: Okay. I sustain the objection.”
 

 As stated earlier, the jury awarded the Fredericks a total of $8,000. The Freder-icks argue that this amount was derived from the inadmissible evidence of the repair estimate and that, therefore, “the verdict was unsupported by any competent evidence.” (Fredericks’ reply brief, p. 19.) The Fredericks argue that the jury should have awarded them $21,300 based on Vaughn’s “uncontroverted” opinion testimony of the value of the automobile before and after the accident.
 

 In
 
 Argo v. Walston,
 
 885 So.2d 180 (Ala. Civ.App.2003), cited by the Fredericks in support of them argument, a landowner brought a breach-of-contract and fraud action for damages resulting when a man-made lake installed on his property repeatedly overflowed. 885 So.2d at 181. Over a hearsay objection, the landowner testified in a bench trial that he had received estimates that it would cost $10,000 to $15,000 to fix the lake. The trial court subsequently entered a judgment in favor
 
 *910
 
 of the landowner for $25,000. On appeal, the defendant who had built the lake argued that there was no competent evidence to support the judgment.
 
 Id.
 
 This court agreed, noting that the trial court had erroneously allowed the landowner to testify as to another person’s estimate of the damage, which was hearsay and did not fit within any exception to the hearsay rule. 885 So.2d at 181. This court therefore reversed the trial court’s judgment and remanded the case for a new trial on the issue of damages.
 

 In
 
 State Farm Fire & Casualty Co. v. Williams,
 
 926 So.2d 1008 (Ala.2005), another case cited by the Fredericks, our supreme court reversed a judgment for a homeowner in an action against the homeowner’s insurance company. At trial, the homeowner was allowed to testify as to the amount it would cost to repair his home following the collapse of a floor beam. The testimony was based on an estimate given to the homeowner by a construction expert who had examined the damage. 926 So.2d at 1014-18. The court ruled that the homeowner’s testimony should have been excluded by the hearsay rule. 926 So.2d at 1017. Because there was no competent evidence to support the damages claim, the supreme court reversed the judgment and remanded the case for the entry of a JML for the insurer. 926 So.2d at 1018.
 

 This case differs from
 
 Argo
 
 and
 
 Williams
 
 in that no witness ever testified as to the content of the repair estimate or made any statement as to the cost to repair the Fredericks’ automobile based on information received from another person in violation of the hearsay rule. The only mention of the cost of repairs was made by Wallis’s attorney when questioning Vaughn. However, to the extent that the jury based its damages award on those statements, the award would be voidable because the statements of counsel are not evidence,
 
 see Armstrong v. State,
 
 516 So.2d 806 (Ala.Crim.App.1986), and “there must be “evidence to justify a finding of the amount for which judgment was rendered.” ’ ”
 
 Argo,
 
 885 So.2d at 182 (quoting
 
 Fidelity & Guar. Ins. Co. v. Sturdivant,
 
 622 So.2d 1279, 1280 (Ala.1993), quoting in turn
 
 Holcombe & Bowden v. Reynolds,
 
 200 Ala. 190, 190, 75 So. 938, 938 (1917)).
 

 The only admissible testimony regarding the amount of the property damage was the opinion testimony of Vaughn establishing that amount as $21,300. However, Wallis points out that the jury viewed photographs of the damage to the automobile and could have decided that Vaughn was exaggerating the damage. Relying on
 
 Nelda Stephenson Chevrolet, Inc. v. Carter,
 
 537 So.2d 45 (Ala.Civ.App. 1988), Wallis argues that the jury could have permissibly assessed the property damage at a figure much lower than $21,300. In Carter, in addition to viewing the damaged vehicle, the jury was given the defendant’s estimate that it would cost $150 to repair the damaged automobile and the owner’s testimony that the automobile had lost $17,000 to $18,000 in value. In affirming an award of $4,500, this court stated that “[t]he $4,500 award was well within the conflicting range of value.” 537 So.2d at 46. In this case, there was no admissible evidence of a conflicting range of values. Nevertheless, Wallis is correct that because Vaughn’s statements as to the value of the automobile were merely opinion testimony, the jury “ ‘has the prerogative of dealing with [the testimony] as it pleases, giving whatever weight their experience or general knowledge directs.’ ”
 
 Carter,
 
 537 So.2d at 46 (quoting
 
 Morgan v. Harris,
 
 55 Ala.App. 694, 696, 318 So.2d 723, 724 (Ala.Civ.App.1975)). The jury obviously did not give full weight to Vaughn’s testimony. Having discounted that testimony, the jury could properly award property damages amounting to less than $21,300, as it plainly did.
 

 
 *911
 
 Because the jury returned a general verdict, this court cannot discern the amount of property damages awarded. In addition to them property-damage claim, the Fredericks also claimed damages for their personal injuries. Therefore, we cannot agree with the Fredericks that the jury necessarily awarded $8,000 solely for property damages. We also note that the $8,000 awarded was $344.38 less than the amount of the repair estimate as declared by Wallis’s counsel. The amount of the award does not plainly and palpably show that the jury used Wallis’s attorney’s questions as the basis for its award. Because we must presume that a jury’s verdict is correct unless shown to be plainly and palpably wrong,
 
 see Charter Hosp. of Mobile, Inc. v. Weinberg, 558
 
 So.2d 909, 911 (Ala.1990), we cannot reverse the judgment in this case.
 
 [1]
 

 For the above-stated reasons, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Because of our disposition of this issue, we pretermit any discussion of whether the Fred-ericks waived their evidentiary arguments by failing to file a postjudgment motion.