The defendants, G.H. Hickman Construction, Inc., Gerald H. Hickman, Ethel H. Hickman, and Fidelity and Guaranty Insurance Company, appeal from a judgment entered on a jury verdict and an award of attorney fees and costs in favor of Dannie Sturdivant. G.H. Hickman Construction, Inc., Gerald Hickman, and Ethel Hickman will be collectively referred to as "Hickman Construction."
Sturdivant alleged that he was a subcontractor and that Hickman Construction was the general contractor on a public works project for the University of Alabama. He alleged that he had a contract with Hickman Construction and that he was not paid for his labor and materials furnished to the public works project under this contract. He sued Hickman Construction, alleging breach of contract and fraud; he also alleged against Hickman Construction and its surety, Fidelity and Guaranty Insurance, a cause of action under the Public Works Act, §39-1-1, Ala. Code 1975.
The jury returned a verdict in favor of Sturdivant and against Hickman Construction and Fidelity and Guaranty Insurance in the amount of $23,176.42; the jury also returned a verdict in favor of Fidelity and Guaranty Insurance and against Hickman Construction for $23,176.42. Hickman Construction and Fidelity and Guaranty Insurance moved for a new trial on the ground that the jury verdict was not supported by the evidence. The trial court denied the motion for new trial.
The trial court had specifically instructed the jury that the bonding company, Fidelity and Guaranty Insurance, would be liable to Sturdivant if the jury found that Sturdivant had established a public works claim. Therefore, because the jury returned a verdict against both Hickman Construction and its surety, Fidelity and Guaranty Insurance, the trial court determined that the judgment was entered on the public works claim and it awarded Sturdivant attorney fees and costs, totaling $41,614.14, under § 39-1-1(b).
The defendants argue that the trial court erred in denying the motion for new trial because, they argue, the amount of the jury verdict, $23,176.42, is not supported by the evidence. A strong presumption of correctness attaches to a jury verdict in Alabama. Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Id. This Court will not disturb a trial court's denial of a motion for new trial when evidence has been presented that, if believed, would support the jury's verdict. Stokes v. Long-Lewis Ford,Inc., 549 So.2d 51, 52 (Ala. 1989). However, "[when] there is no evidence to support a jury verdict, the trial court should grant a motion for new trial on that ground." Posey v. Meyers,370 So.2d 986, 986 (Ala. 1979). Also, the trial court should grant a motion for new trial when the amount of a jury verdict "cannot be justified upon any reasonable hypothesis presented by the evidence." See Holcombe Bowden v. Reynolds, 200 Ala. 190,190, 75 So. 938, 938 (1917).
In Holcombe Bowden, this Court reversed a trial court's judgment because the amount of the judgment was not supported by the evidence. This Court stated:
 "There was no evidence to justify a finding of the amount for which judgment was rendered; nor can it be said, the amount in controversy considered, that the amount so ascertained even approximated one or the other of the conclusions possible under tendencies of the evidence. In this state of the case appellants' motion for a new trial should have been granted. It is no adequate answer to say that a judgment for a larger amount might have been justified as a legal possibility — though we are inclined to think the weight of the evidence looked to the contrary — and hence that appellants have no legally tenable ground of complaint against a finding in favor of which the same presumption is indulged as in the case of a jury verdict. The court tried the facts without a jury and just as a jury would, and the rule is *Page 1281 that, where the verdict which the jury returns cannot be justified upon any reasonable hypothesis presented by the evidence, it ought obviously to be set aside. Neither the court nor the jury have the right to arbitrate or compromise differences between the parties, and hence, when it appears that the verdict cannot be justified on any reasonable hypothesis of fact founded in the evidence, the finding must be held to have been the result of compromise or mistake and, upon proper proceedings, must be set aside or reversed."
200 Ala. at 190, 75 So. at 938 (emphasis supplied).
Although Hickman Construction disputed whether Sturdivant was a "subcontractor," the record reveals the following regarding Sturdivant's alleged subcontract with Hickman Construction: Sturdivant agreed to furnish all labor and materials and to perform all work for Hickman Construction pursuant to Hickman Construction's contract with the University; in return, Hickman Construction agreed to pay Sturdivant $216,413.23. Hickman Construction was to be paid $246,320.00 by the University for the project; subsequent change orders increased the amount actually paid to $248,989.57. In arriving at the precise figure of $216,413.23, Sturdivant estimated that the total cost of labor and materials for the project would be $178,413.23, and he added in a profit of $38,000. According to Sturdivant's testimony, his contract did not guarantee a profit of $38,000; he testified as follows:
 "Q. . . . Dannie, when we talk about a minimum profit [$38,000], this figure of [$216,413.23] was not going to change was it?
"A. No, sir.
 "Q. But if the cost of the job was less than [$178,413.23], then your profit would be greater?
"A. Yes, sir.
 "Q. So wherever you could be efficient, be thrifty in the way you did the job, that cost would just come down into the profit line? "A. Yes, sir.
 "Q. But your agreement with Mr. Hickman was [$216,413.23]; is that correct?
"A. Yes, sir.
 "Q. And there is nothing different on this job than any of the previous jobs that you have done?
 "A. Yes, sir. I take that back. The one thing different on this job from the others: I did tell [Mr. Hickman] that I was afraid of going through those columns; I thought that it may get sticky in there somewhere of things unforeseen and I thought if it cost me [$216,413.23] — if it cost me every penny of that, I felt like he ought to go with me from that point up to what he had in it and let's split whatever's left and not be fair for him to walk away with something and me walk away with nothing, which we did not have that agreement on the other sites."
Sturdivant testified that the terms of his contract provided that Hickman Construction would pay him $216,413.23; however, Hickman Construction would actually pay for the materials and would handle the payroll for the labor. Any amounts paid by Hickman Construction for materials and/or labor for the University project were to be credited against the subcontract amount of $216,413.23.
On or about June 26, Sturdivant abandoned the project, before its completion. He filed his notice of claim, as required by § 39-1-1(b), claiming Hickman Construction owed him $68,879.04. He arrived at this figure by "estimating" the total actual cost of the project at $147,534. 19. Hickman Construction presented evidence, including ledger sheets, cancelled checks, and project documentation maintained by the University, that showed the actual cost of the project was $246,660.07. Hickman Construction was paid $248,989.57 for the project, a "profit" for Hickman Construction of $2,329.50.
As stated above, the jury returned a verdict in favor of Sturdivant for $23,176.42. This amount is not supported by the record. Considering the testimony of the parties, considering the exhibits, and *Page 1282 
allowing for the calculation of interest, we cannot find support for this figure in the evidence presented at trial.
Assuming that the jury found that Sturdivant had a subcontract with Hickman Construction and that he was entitled to damages because of Hickman Construction's failure to pay, the jury was required to award him damages in accordance with the terms of his contract. See Price v. H.L. Coble ConstructionCo., 317 F.2d 312, 319 (5th Cir. 1963). Under the terms of his contract, Sturdivant was entitled to the difference between $216,413.23 and the actual cost of labor and materials for the project; if the cost of labor and materials for the project was over $216,413.23, Sturdivant alleges, he and Hickman Construction agreed to split any profit that Hickman Construction received.
Sturdivant testified that the cost of the project was $142,934. 19; if the jury believed this testimony, Sturdivant should have been awarded approximately $69,000 plus interest. Hickman Construction, however, testified that the actual cost of the project was $246,660.07, which is greater than Sturdivant's subcontract amount of $216,413.23 and only $2,329.50 less than the amount the University paid to Hickman Construction. Sturdivant testified that Hickman Construction had agreed to split any profit if the cost of the project was over the subcontract estimated cost; therefore, the jury could have returned a verdict for $1,164.75 plus interest. The evidence would support a verdict in favor of Sturdivant, based upon the alleged subcontract, of $1,164.75 plus interest or one that approximated $69,000 plus interest. However, after carefully and thoroughly considering all the exhibits and all the testimony offered at trial, we hold that the evidence does not support a verdict for $23,176.42, based on the alleged subcontract.[1]
 In the case of S.D. Winn Cigar Co. v. Wilson, 35 Ala. App. 466, 48 So.2d 64 (1950), the Court of Appeals stated:
 "It is of course well settled that where damages are unliquidated, a defendant can not complain that the amount of damages awarded was inadequate.
 "However, where the issue is contract, or no contract, and the jury finds the contract to exist, which by its terms definitely, specifically, and unalterably fixes the amount of damages due for breach thereof, . . . the unsuccessful party may successfully assert such inadequacy as prejudicial error."
Id., 35 Ala. App. at 468, 48 So.2d at 65. The Court of Appeals further stated:
 "It is not sufficient to say that the defendant cannot complain because he was not injured. He was injured by being deprived of the right of a litigant to have the jury determine his liability under the law as laid down by the court. That liability might be for more than the jury found; yet it might be for nothing. What his liability is, the jury refused to say; but said something else, which, under the law and on the facts, was simply untrue."
Id., 35 Ala. App. at 469, 48 So.2d at 66 (quoting Stetson v.Stindt, 279 F. 209, 211 (3d Cir. 1922), as quoted inMetropolitan Life Ins. Co. v. Ray, 28 Ala. App. 357, 184 So. 282
(1938)).
The defendants, Hickman Construction and Fidelity and Guaranty Insurance, have been "deprived of the right of a litigant to have the jury determine his liability under the law as laid down by the court." *Page 1283 See S.D. Winn Cigar Co., 35 Ala. App. at 469, 48 So.2d at 66. Indulging all presumptions of correctness and carefully considering all the evidence in the record, we hold that the jury verdict in favor of Sturdivant for $23,176.42 is not supported by the evidence; therefore, the trial court erred in denying the defendants' motion for a new trial.[2]
The judgment in favor of Sturdivant is reversed. Because we reverse the judgment in favor of Sturdivant, we necessarily reverse the judgment requiring Hickman Construction to indemnify Fidelity and Guaranty Insurance. We pretermit discussion of the defendants' challenge to the trial court's award of attorney fees and costs and remand this cause for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] Sturdivant argues in his brief that the verdict amount may be based upon the jury's determination of the value of his labor and materials furnished; this argument ignores the fact that Sturdivant offered no evidence as to the value of services he had provided to Hickman Construction and the University project, but for which he had not been paid. He also argues that the figure may be the result of the jury's determination of a set-off or of the jury's finding as to cost-to-complete after he abandoned the project. However, no testimony, other than what is set forth above, was offered to prove costs of the project. Indeed, Sturdivant's own testimony is that his figure as to the total cost of the project ($147,534.19) is an estimate as of June 26, the day he abandoned the project. Quite simply, there is no way to mathematically approximate the amount of the jury verdict, based upon the testimony and exhibits in the record.
[2] We note that the claim based upon the subcontract was not the only claim submitted to the jury. The trial court also instructed the jury on Sturdivant's claims based upon quantum meruit and upon fraud. The general verdict returned in favor of both the Hickmans and their surety, Fidelity and Guaranty Insurance, precludes a finding that the general verdict was based on fraud. The record is also devoid of any evidence, other than that related to the alleged contract, regarding the value or worth of the labor and/or materials furnished by Sturdivant; thus any recovery on a quantum meruit theory is precluded.