Thomas C. MONROE, Jr., as Executor of the Estate of Helen M. Monroe, and Individually, Plaintiff,

v.

Michael BROWN and Southern A.G. Carriers, Inc., Defendants.

Civil Action No. 03–T–188–N.

United States District Court, M.D. Alabama, Northern Division.

March 9, 2004.

Richard A. Lawrence, Lynwood Scott Johnson, Jr., L. Scott Johnson, Jr., Montgomery, AL, for plaintiff.

Randall C. Morgan, Doy Leale McCall, III, Hill Hill Carter Franco Cole & Black, Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

This lawsuit arises out of an automobile accident in which a tractor-trailer, driven by defendant Michael Brown and owned by defendant Southern A.G. Carriers, Inc., rear-ended a pickup truck which was being driven by plaintiff Thomas C. Monroe, Jr. and in which his now-deceased wife Helen M. Monroe was a passenger. Mr. Monroe, in his capacity as executor of the estate of Mrs. Monroe and in his individual capacity, alleges that Brown and Southern wantonly and negligently caused the accident. This court has jurisdiction under 28 U.S.C.A. §§ 1332(a) (diversity jurisdiction), 1441(a) (removal jurisdiction), and 1367(a) (supplemental jurisdiction). The case is now before the court on Brown and Southern's motion for summary judgment on Monroe's wantonness claim. For the reasons that follow, the court will deny Brown and Southern's motion.

## I. BACKGROUND

On October 17, 2001, a tractor-trailer driven by Brown rear-ended the Monroes' pickup truck in Montgomery, Alabama. At the time of the accident, Mr. Monroe was driving the truck, and Mrs. Monroe was a passenger. The accident occurred at the intersection of Route 231 (also called the Troy Highway) and Bell Road. Prior to the accident, Brown was traveling north on Route 231 when Mr. Monroe merged on to Route 231 in front of him. After merging, Mr. Monroe accelerated to 45 miles-per-hour, and Brown followed behind him.

As he approached the traffic light at the intersection of Route 231 and Bell Road, Mr. Monroe stepped on the brake for a short time to signal to drivers behind him that he was stopping; this was his regular practice. Next, he took his foot off the brake, let the car roll, and then brought the car to a stop at the traffic light when he saw the traffic light turn red. The Monroes were stopped at the traffic light long enough for Mrs. Monroe to reach into the car's console to get a glass of water. It was then that Brown's tractor-trailer hit the Monroes' pickup truck from behind.

Brown testified that, as he approached the intersection, he took his foot off the

accelerator in anticipation of stopping and saw the traffic light turn from green to yellow. One or two seconds after he saw the traffic light turn yellow, he saw the Monroes' brake lights come on for a few seconds and saw their truck slow down. Brown then applied his own brakes. Next, he saw the Monroes' brake lights go off, and he thought he saw the Monroes' pickup pulling away from him. At this point Brown accelerated because he thought that the Monroes had decided to drive through the intersection while the traffic signal was yellow, and he decided he would follow them through the intersection. However, Mr. Monroe then applied his brakes and came to a stop. Brown applied his brakes in an attempt to stop his truck, but he could not stop before he hit the back of the Monroes' pickup truck.

There is neither evidence that Brown was speeding at the time of the accident nor that alcohol or drugs played any part in the accident. There is evidence that Brown knew from his training that it takes a tractor-trailer 80 to 120 yards, on average, to come to a stop.

On January 10, 2003, the Monroes filed this lawsuit against Brown and Southern in an Alabama state court. They alleged that Brown and Southern negligently and wantonly caused Brown's vehicle to collide with theirs. Mrs. Monroe sought compensatory and punitive damages for medical expenses, pain and suffering, mental anguish, permanent injuries and disabilities, and aggravation of pre-existing conditions; Mr. Monroe sought damages for loss of consortium.

Brown and Southern removed the case to this court on February 18, 2003, and the court denied the Monroes' subsequent motion to remand on April 7, 2003. *Monroe v. Brown,* 256 F.Supp.2d 1292 (M.D.Ala.

2003) (court had supplemental jurisdiction over Mr. Monroe's loss-of-consortium claim).

On May 20, 2003, Mrs. Monroe died of causes unrelated to the accident, and Mr. Monroe subsequently filed an amended complaint, in which he named himself as sole plaintiff but in two capacities, as executor of Mrs. Monroe's estate and in his individual capacity. The amended complaint contains the same allegations as the original complaint and also contains a new allegation that Brown and Southern "negligently and/or wantonly" caused Mr. Monroe to suffer medical expenses, mental anguish, and property damage to his vehicle; in other words, Mr Monroe now seeks more than just loss-of-consortium damages.

## II. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.  DISCUSSION

Brown and Southern move for summary judgment on only the wantonness claim. Specifically, they argue that Mr. Monroe may have sufficient evidence to go to trial on the negligence claim, but he does not have evidence sufficient to support the wantonness claim.

### A.  Alabama Law of Negligence and Wantonness

"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Lynn Strickland Sales and Serv., Inc. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142, 145 (Ala.1987), *overruled on other grounds, Alfa Mut. Ins. Co. v. Roush,* 723 So.2d 1250, 1256 (Ala. 1998).

Negligence refers "only to that legal delinquency which results whenever a man fails to exhibit the care which he ought to exhibit, whether it be slight, ordinary, or great." *Lynn Strickland Sales*, 510 So.2d at 146 (quoting *Blacks Law Dictionary* (5th ed.1979)). In other words, negligence "is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So.2d 236, 238 (Ala.1995). "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care." *Lynn Strickland*, 510 So.2d at 145.

Wantonness, on the other hand, is statutorily defined as "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others," 1975 Ala.Code § 6–11–20(b)(3), and has been defined by the Supreme Court of Alabama as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co.*, 723 So.2d at 1256. The distinction between negligence and wantonness thus lies in the state of mind of the defendant. *Lynn Strickland*, 510 So.2d at 145. However, "[t]o prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Alfa Mut. Ins. Co.*, 723 So.2d at 1256.

To survive summary judgment, then, Mr. Monroe must establish a genuine issue of fact as to whether Brown (1) acted consciously when he attempted to drive through the intersection before the light changed from yellow to red, and (2) was conscious, based on existing conditions, that injury was a likely or probably result of his actions. In considering Brown and Southern's summary-judgment motion, the court is mindful of the Supreme Court of Alabama's admonition that "[w]antonness should be submitted to the jury unless there is a total lack of evidence from which

the jury could reasonably infer wantonness." *McDougle v. Shaddrix,* 534 So.2d 228, 231 (Ala.1988).

### B. Did Brown Act Consciously?

There is evidence that Brown acted consciously when he attempted to drive through the intersection at Route 231 and Bell Road before the traffic light changed. Brown said as much in his deposition: he saw that the signal was yellow, he thought that Mr. Monroe had decided to drive through the intersection before the light turned red, and he decided to accelerate to follow Mr. Monroe through the intersection.

Brown's conscious decision to accelerate in order to get through the intersection before the light changed distinguishes this case from two similar cases in which Alabama courts affirmed directed verdicts in favor of the defendants on the issue of wantonness. In *Wang v. Bolivia Lumber Co.,* 516 So.2d 521 (Ala.1987), the plaintiff's car was rear-ended at a traffic light by an 18–wheel truck driven by the defendant. The accident occurred because the traffic light turned yellow as the defendant approached the intersection. 516 So.2d at 523–24. The defendant applied his brakes but was unable to stop his truck, and he lost control of the truck as it slid sideways and into the rear of the plaintiff's automobile. *Id.* at 524. There was evidence that the defendant was not driving in excess of the speed limit at the time of the accident and evidence that it had rained earlier on the day of the accident. *Id.* The court affirmed the trial court's directed verdict in favor of the defendant on the issue of wantonness. *Id.* The present case is distinguishable from *Wang* because there is evidence that Brown, unlike the truck driver in *Wang,* did not try to stop his truck when the traffic light turned yellow; instead, he accelerated to get into the intersection before the traffic light changed to red.

In *Hughes v. Southern Haulers, Inc.,* 379 So.2d 601 (Ala.Civ.App.1980), the plaintiff was the executor of his parents' estate, and he sued the owner and driver of a truck involved in a head-on collision that killed his parents. The crash occurred when a car in front of the defendant's truck attempted to turn, and the defendant veered into the on-coming lane of traffic to avoid hitting the turning car. 379 So.2d at 602. The court affirmed the trial court's directed verdict on wantonness because there was "neither evidence that defendant was driving at an excessive speed nor that he caused the emergency which resulted in the fatal collision." *Id.* at 604. Unlike in *Hughes,* however, there is evidence that Brown's decision to accelerate as he approached the intersection—instead of continuing to brake—caused the collision with the Monroes.

This case is more analogous to *Allen v. Hill,* 758 So.2d 574 (Ala.Civ.App.1999). In *Allen,* the plaintiff was the passenger in a car driven by the defendant when the car was involved in an accident with a second car at an intersection marked with stop signs. 758 So.2d at 575. The driver of the second car testified that the defendant entered the intersection at 50 to 60 miles per hour and failed to stop at the stop sign. *Id.* at 576. The court concluded that "[a] jury could reasonably infer from [the other driver's] testimony that [the defendant] did not stop at the stop sign and drove through the intersection at a high rate of speed. Such an inference would support a verdict in [plaintiff's] favor on the issue of wantonness." *Id.*

In one sense, *Allen* is distinguishable because the defendant was required to

stop at the stop sign, while Brown legally could have driven across the intersection if he had entered it before the traffic light turned to red. 1975 Ala.Code 1975 § 32–5A–32(2)(a) provides that "[v]ehicular traffic facing a steady circular yellow or yellow arrow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter;" therefore, as the commentary to the statute explains, "it is not unlawful ... for traffic that has lawfully entered the intersection on yellow, to continue across it when the red signal appears." [1]

However, *Allen* is analogous on the issue of conscious action. As in *Allen* and unlike in *Wang* and *Hughes*, there is evidence that Brown decided to speed up as he approached the intersection, a conscious action that, at the least, contributed to the accident. Therefore, the court concludes that a genuine issue of fact exists as to the first element of wantonness.

### C. Was Brown Conscious that Injury Would Likely or Probably Result From His Action?

As noted above, the second element of wantonness is that the defendant must have acted "while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co.*, 723 So.2d at 1256. Two Alabama statutory rules of the road inform the court in its assessment of whether Brown acted with this consciousness.

First, as stated, 1975 Ala.Code 1975 § 32–5A–32(2)(a) provides that "[v]ehicular traffic facing a steady circular yellow or yellow arrow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter." Thus, while the commentary to the statute explains, "it is not unlawful ... for traffic that has lawfully entered the intersection on yellow, to continue across it when the red signal appears," *id.*, commonsense dictates that, because a red light is imminent, a driver entering an intersection despite a yellow light should proceed cautiously and with due regard to the safety of those behind him, in front of him, coming in the opposite direction, and approaching the intersection from all other angles. *See* 60A C.J.S. Motor Vehicles § 726 ("A yellow or amber light, used in a device together with red and green signals, generally warns that a red light is about to appear, and that it is hazardous to enter the intersection. Such a light does not require a stop in all circumstances, regardless of the position of the vehicle and traffic conditions in the intersection, and not every motorist who enters an intersection on a yellow light will be held negligent or contributorily negligent. A driver may be entitled to enter and proceed through the intersection when he or she can do so before the yellow or amber light turns red, provided that the driver proceeds cautiously and with due regard for the safety of others lawfully within the intersection.") (footnotes omitted); 7A Am.Jur.2d Automobiles and Highway Traffic § 327 ("The view apparently taken by the weight of authority with reference to vehicles confronted by cautionary traffic signs or signals is that the driver of such a vehicle is under the duty to exercise caution upon entering an intersection, the degree of which is expressly or impliedly recognized in most instances to be greater than the ordinary duty of care imposed upon a driver enter-

---

**1.** *See infra* note 2.

ing an entirely uncontrolled intersection.").[2] Second, 1975 Ala.Code § 32–5A–89(a) provides that, "The driver of a motor vehicle shall not follow another more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." [3]

Sections 32–5A–32(2)(a) and 32–5A–89(a), read together, instruct that the driver of a vehicle trailing another vehicle must, as both vehicles approach a yellow light, maintain sufficient control and distance between the two vehicles so as to be able to stop safely should the driver of the leading vehicle decide that it is safer to stop rather than proceed through the yellow light. Thus, Brown had a duty to begin to slow his tractor-trailer *and* keep sufficient distance between his tractor-trailer and the Monroes' truck as they approached the yellow light so that he would not collide with the Monroes should the Monroes decide to stop rather than proceed through the yellow light. *Cf.*

*Gribble v. Cox,* 349 So.2d 1141, 1144 (Ala. 1977) (a motorist approaching an intersection has an obligation to have his vehicle under control so that he does not drive into the rear of a vehicle ahead of him whose driver is obeying traffic signals by waiting for the red light to change.).

Two cases illustrate the application of the second element of wantonness. In *Barker v. Towns,* 747 So.2d 907 (Ala.Civ. App.1999), the plaintiff was injured in an accident while riding in a pickup truck driven by the defendant. The accident occurred when the defendant, who had stopped at a stop sign at the intersection of two roads, attempted to drive through the intersection before an oncoming logging truck, which had the right of way and no stop sign, reached the intersection on the intersecting road. 747 So.2d at 908. The court found that the plaintiff's "evidence tending to show that [the defendant] entered the intersection after seeing the truck approaching at a high rate of speed" supported his claim for wantonness, and

**2.** Alabama's yellow-light statute is identical or similar to the vast majority of the other States' laws. *See, e.g.,* 625 Ill. Comp. Stat. Ann. 5/11–306(b)1 (identical language); Cal. Veh.Code § 21452 (similar language). At least 40 States have such identical or similar statutes.

A small minority of States, however, have statutes that prescribe that a driver, upon seeing a yellow signal, *must* stop unless the stop cannot be made safely, in which case the driver may proceed through the intersection cautiously. *See, e.g.,* Iowa Code § 321.257. New Jersey's statute is unique among this minority because it provides detailed guidance on when a driver must stop upon seeing a yellow signal:

"Amber, or yellow, when shown alone following green means traffic to stop before entering the intersection or nearest crosswalk, unless when the amber appears the vehicle or street car is so close to the intersection that with suitable brakes it cannot be stopped in safety. A distance of fifty feet

from the intersection is considered a safe stopping distance for a speed of twenty miles per hour, and vehicles and street cars if within that distance when the amber appears alone, and which cannot be stopped with safety, may proceed across the intersection or make a right or left turn unless the turning movement is specifically limited."

N.J. Stat. Ann. § 39:4–105.

**3.** Section 32–5A–89(a) goes on to provide that, "Except when overtaking and passing another vehicle, the driver of a vehicle shall leave a distance of at least 20 feet for each 10 miles per hour of speed between the vehicle that he is driving and the vehicle that he is following." The submissions of the parties in this matter, however, provide neither evidence of Brown's speed prior to the accident nor evidence of the distance between Brown and Mr. Monroe prior to the accident.

the court reversed the trial court's decision granting summary judgment to the defendant. *Id.* at 909.

In *Sellers v. Sexton,* 576 So.2d 172 (Ala. 1991), a car driven by the defendant was in a collision that killed the passenger, and the executor of the passenger's estate sued. The accident occurred after the defendant lost control of the car on a bridge and collided with an on-coming truck. 576 So.2d at 173–74. The evidence showed that the defendant had driven on the bridge before and knew there was a wide curve in the road that blocked her view of approaching traffic; the evidence also showed that the defendant knew that loose stone had been put down on roads in the area because of impending bad weather. *Id.* at 173. In fact, shortly before the accident, the defendant drove over a similar bridge on which loose stone—also called "slag"—had been placed. *Id.* Despite knowing about the curve and the loose stone, the defendant did not slow down as she entered the bridge. *Id.* The court held that "[t]hese facts constituted substantial evidence to support the wantonness claim." *Id.* at 175.

Thus, in *Barker* and *Sellers,* the Alabama courts identified the conditions or circumstances that made it likely or probable that the defendant's act or omission would result in injury and then determined if the defendant was aware of those conditions or circumstances. In *Barker,* it was the fast-approaching truck that made it likely that injury would result when the defendant attempted to cross the intersection, and because the defendant was aware of the approaching truck, the court held there was evidence of wantonness. Similarly, in *Sellers,* it was the curve in the road and loose rock on the bridge that made it probable that injury would result

when the defendant failed to slow down upon entering the bridge; the fact that the defendant was aware of both conditions was evidence of her wantonness.

In this case, two conditions made it likely that Brown's attempt to accelerate through the intersection while the traffic light was yellow would result in injury, and Brown knew about both of them. First, drivers tend to slow down and stop for yellow traffic lights; indeed, before Brown decided to accelerate, Mr. Monroe warned Brown that he might stop by putting on his brakes for a short period of time. Brown thus knew that it was reasonably possible, if not probable, that Monroe was going to stop for the yellow light. *See Hornady Truck Line, Inc. v. Meadows,* 847 So.2d 908, 916 (Ala.2002) (in determining wantonness, a driver's knowledge may be reasonably inferred from the circumstances). Second, tractor-trailer trucks need a long distance to slow down and stop. Brown testified at his deposition that he had learned that tractor-trailer rigs require, on average, 80 to 120 yards to come to a stop. Brown thus knew that he would not be able to stop his truck quickly if Mr. Monroe stopped at the light.

As stated, Brown had a duty to begin to slow his tractor-trailer *and* keep sufficient distance between his tractor-trailer and Mr. Monroe's truck as they approached the yellow light so that he would not collide with the Monroes should Mr. Monroe decide to stop rather than proceed through the yellow light. Instead, Brown consciously chose to accelerate and, thereby, consciously created a greater danger for all concerned. These facts create a genuine issue for trial as to whether Brown was conscious that injury would "likely or probably result," *Alfa Mut. Ins. Co.,* 723 So.2d at 1256, when he tried to accelerate cross

the intersection before the traffic signal turned red. *See Scott v. Villegas*, 723 So.2d 642, 644 (Ala.1998) (wantonness issue should go to jury where there is evidence that driver knew he could not control his car under the conditions at the time of the accident). The court is thus satisfied that Monroe has sufficient evidence to create a genuine issue of fact as to the second element of wantonness.

One further Alabama case warrants discussion, however. In *Wilson v. Cuevas*, 420 So.2d 62, 64–65 (Ala.1982), another case involving a car accident at an intersection, the plaintiffs had evidence that the accident resulted because the defendant had accelerated to get through the intersection before the traffic light changed from yellow to red. Prior to the accident at issue in *Wilson*, the defendant was driving east-bound and the plaintiffs were driving west-bound on the same street, and they were both approaching the same intersection. 420 So.2d at 63. The traffic light at the intersection followed a familiar pattern: first, the east-bound traffic had a green signal and a green left-turn arrow while the west-bound traffic had a red signal; next, the east-bound traffic's left-turn arrow turned off, and both directions had a green signal; finally, the west-bound traffic had the green left-turn arrow while the east-bound traffic had a red signal. *Id.* There was evidence that the defendant, traveling east-bound, accelerated in order to turn left just before the left-turn arrow turned off. *Id.* at 64. The defendant did not make it across the intersection before the west-bound traffic got the green signal, however, and the plaintiffs collided with the right side of the defendant's car as it was stopped in middle of the west-bound lanes. *Id.* at 63. Notwithstanding this evidence that the defendant's attempt to "beat the light" caused the accident, the Supreme Court of Alabama affirmed a directed verdict in favor of the defendant on wantonness.

The court is not persuaded that *Wilson* requires summary judgment in favor of Brown and Southern, however. The *Wilson* decision does not reveal the Supreme Court's reasoning; rather it simply concludes that "[a]lthough defendant's act, under other circumstances, could constitute wanton conduct, here it does not. The facts do not allow us to reasonably infer that defendant acted with 'reckless indifference' to the consequences, had knowledge of the danger present, or otherwise came within the definition of wantonness." *Id.* at 64–65. Aside from the fact that arguably the defendant in *Wilson* could have assumed that the plaintiffs would not enter the intersection until it was completely clear, in this case there are "other circumstances" such that Brown's act could constitute wanton conduct. Brown knew he was approaching a yellow light; knew Mr. Monroe had expressly warned those behind him, by applying his brakes once, that he might stop; and knew he had not maintained sufficient distance so that he would be able to stop his 67–foot tractor-trailer quickly if Mr. Monroe applied his brakes again to come to a full stop. These circumstances sufficiently distinguish the present case from *Wilson*.

Accordingly, it is ORDERED that the motion for summary judgement, filed by defendants Michael Brown and Southern A.G. Carriers, Inc. on December 1, 2003 (doc. no. 31), is denied.