BRYAN, Judge.
 

 The sole issue presented by this appeal is whether the trial court erred in holding that Eric Pennington, the defendant below, was entitled to a summary judgment with respect to the wantonness claim of Robert A. Mandella, Sr. (“Robert”), and Sharon Mandella (“Sharon”), the plaintiffs below. For the reasons discussed below, we conclude that the trial court did not err in entering a summary judgment in favor of Pennington on the wantonness claim, and, therefore, we affirm the judgment of the trial court.
 

 Standard of Review
 

 “We review a summary judgment de novo.
 
 American Liberty Ins. Co. v. AmSouth Bank,
 
 825 So.2d 786 (Ala.2002).
 

 “
 
 We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
 

 “Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects,
 
 P.C.], 792 So.2d [369] at
 
 *1258
 
 372 [ (Ala.2001) ] (citations omitted), quoted in
 
 American Liberty Ins. Co.,
 
 825 So.2d at 790.”
 

 Potter v. First Real Estate Co.,
 
 844 So.2d 540, 545 (Ala.2002).
 

 Undisputed Facts
 

 On September 14, 2009, Robert and Pennington were coworkers at a Domino’s Pizza franchise (“Domino’s”) located along the northern right-of-way of Highway 84 in Dothan. Highway 84, which is also known as East Main Street, consists of multiple westbound lanes and multiple eastbound lanes separated by a concrete median. On September 14, 2009, both Robert and Pennington received paychecks and wanted to go to the Regions Bank branch (“Regions”) located along the southern right-of-way of Highway 84 across from Domino’s in order to do their banking. Robert accepted Pennington’s offer of a ride to Regions and got into the front passenger seat of Pennington’s automobile. Pennington got into the driver’s seat and drove the automobile. Pennington was familiar with the portion of Highway 84 separating Domino’s from Regions. Although there is no traffic light located directly between Domino’s and Regions, there is a paved gap in the concrete median there. The paved gap in the median allows traffic to cross the median from the westbound lanes to the eastbound lanes and vice versa. In order to travel from Domino’s parking lot to Regions, Pennington planned to cross the westbound lanes to the paved gap in the concrete median and then cross the eastbound lanes. Pennington drove his automobile to the edge of Domino’s parking lot, stopped at the stop sign located there, and waited for several automobiles to pass in the westbound lanes before proceeding to cross Highway 84. Pennington’s automobile crossed the westbound lanes to the paved gap in the concrete median without incident. While it was crossing the eastbound lanes of Highway 84, Pennington’s automobile was struck broadside on the passenger side by a truck and Robert was injured.
 

 Disputed Facts
 

 Pennington testified that, after crossing the westbound lanes, he stopped in the paved gap in the concrete median but his shoe, which was wet from the rain that had been falling that day, slipped off of the brake pedal, and his automobile rolled into the middle of the northernmost eastbound lane before he was able to apply the brake again and stop. He further testified that, except for the pillar connecting the roof of his automobile to its hood, he had an unobstructed view of oncoming traffic in the eastbound lanes and that, except for some traffic located approximately 400 or 500 feet away, he did not see any oncoming traffic in the eastbound lanes. He testified that he thought that he would have enough time to cross the eastbound lanes before the oncoming traffic he saw 400 or 500 feet away reached him and that he proceeded to cross the eastbound lanes but a truck struck his automobile when his automobile was in the third eastbound lane from the paved gap in the concrete median. He testified that he had not seen that truck before it struck his automobile.
 

 Robert testified that he did not know whether Pennington stopped in the paved gap in the concrete median. Chris Beck signed an affidavit in which he testified as follows:
 

 “1. On September 14, 2009, I was traveling east on East Main Street in Dothan, Alabama.
 

 “2. I was in the left lane of the east bound lanes of East Main Street. I saw a Toyota Camry attempting to cross four lanes of traffic. The Camry had to cross the west bound
 
 *1259
 
 lanes, the median, and then the east bound lanes.
 

 “8. The Toyota Camry failed to stop in the median even though I was very close to the median, I narrowly missed colliding into the Toyota Camry.
 

 “4. While I narrowly missed the Toyota Camry, the Toyota Camry was involved in [a] collision with a commercial sized truck that was in the right lane just beside me.
 

 “5. There were no obstructions that would have blocked the view of the driver of the Toyota Camry.
 

 “6. The driver of the Toyota Camry did not stop in the median or yield to the oncoming traffic even though I and the truck beside me were very close to the median when the Toyota attempted to cross. It appeared to me that he was trying to race across four lanes in an attempt to beat the oncoming traffic.”
 

 Procedural History
 

 Robert and his wife, Sharon, sued Pennington, stating claims of negligence and wantonness. Pennington moved for a summary judgment, asserting that he was entitled to a summary judgment with respect to the negligence claim by virtue of the Guest Passenger Statute, § 32-1-2, Ala.Code 1975,
 
 [1]
 
 and that he was entitled to a summary judgment with respect to the wantonness claim by virtue of the supreme court’s decision in
 
 Ex parte Essary,
 
 992 So.2d 5 (Ala.2007).
 

 Robert and Sharon conceded that Pennington was entitled to a summary judgment with respect to the negligence claim by virtue of the Guest Passenger Statute; however, they asserted that he was not entitled to a summary judgment with respect to the wantonness claim. Specifically, they argued:
 

 “The facts of this case are almost identical to the facts in
 
 Barker v. Towns,
 
 747 So.2d 907 (Ala.Civ.App.1999), which held that the issue of wantonness should be decided by the jury. Towns, the defendant driver, failed to yield the right-of-way to an oncoming truck that should have been clearly visible. The truck driver testified that Towns never stopped before entering the intersection. The truck struck Towns’ vehicle killing Towns and injuring his passenger. The trial court’s summary judgment on the issue of wantonness was reversed by the Alabama Civil Court of Appeals which ruled there was sufficient proof of evidence to present the wantonness claim to a jury.
 

 “Like the plaintiff in
 
 Barker,
 
 [Robert and Sharon have] ‘presented evidence tending to show that [Pennington] entered the intersection after seeing the truck approaching’ the intersection.
 
 Id.
 
 at 909. Although he denies seeing the truck, Pennington admitted to having an unobstructed view in the direction of the oncoming trucks.... Additionally, and as was the case in
 
 Barker,
 
 an eyewitness saw Pennington race through the median into the path of the oncoming truck, ‘and there is no dispute that the truck driver had the right-of-way.’
 
 Id.
 
 at 909.... Therefore, as the court held in
 
 Barker,
 
 ‘[t]hese facts constitute! ] sub
 
 *1260
 
 stantial evidence supporting the wantonness claim; therefore, the issue [should be] presented to the jury.’
 
 Id.
 
 at 909.
 

 “The facts that made wantonness a jury question in
 
 Clark v. Black,
 
 630 So.2d 1012 (Ala.1993), are present in this case. In
 
 Clark,
 
 the defendant was very familiar with the intersection and therefore should have been familiar with the dangers associated with the intersection.
 
 Id.
 
 at 1016. Pennington was very familiar with this intersection because he traversed it routinely leaving Domino’s to deliver pizzas ..., in fact, his delivery area included Ashford, which would require him to use this intersection to turn left. In
 
 Clark,
 
 one hazard was a ‘hill-crest’ that limited visibility of the intersection. In this case, the hazard is crossing at least six lanes of traffic on a highway.
 

 “Like the defendant in
 
 Clark,
 
 Pennington knew of his obligation to yield to oncoming traffic but made no attempt to do so. Also like the defendant in
 
 Clark,
 
 Pennington attempted to race across the intersection without any regard to oncoming traffic. As the Supreme Court recognized in
 
 [Ex parte
 
 ]
 
 Essary,
 
 992 So.2d 5 (Ala.2007), disregard of known dangers of an intersection is sufficient to make wantonness a question for the jury-
 

 “Judge Thompson in
 
 Monroe v. Brown,
 
 307 F.Supp.2d 1268 [ (M.D.Ala.2004) ], denied a defendant’s motion for summary judgment on the issue of wantonness involving a rear-end collision because the defendant consciously ignored the rules of the road. In
 
 Monroe,
 
 the plaintiff approached an intersection, braked, and then released the brake. The defendant driver assumed that the plaintiff was going to proceed through the yellow light and the defendant driver intended to do the same. The plaintiff, however, stopped at the intersection and the defendant driver rear ended the plaintiff [rjather than heeding the yellow light and coming to a stop. Judge Thompson found that the defendant driver consciously accelerated assuming that the plaintiff would proceed through the yellow light, creating a risk for all those involved. Pennington, like the defendant in
 
 Monroe,
 
 made a conscious decision to ignore the rules of the road.
 

 “Pennington’s conduct was materially different than the driver in
 
 Essary.
 
 First, in
 
 Essary,
 
 the Supreme Court emphasized the absence of any evidence to suggest that there was particular danger at the intersection that the defendant should have been aware of.
 
 Es-sary
 
 makes no mention of the size of the intersection, and presumably, it was not an issue. But in this case, Pennington had to traverse six lanes of traffic, two turn lanes, and a median to cross this intersection. Rather than exercising more caution at this intersection, Pennington did the opposite by racing across it.
 

 “Second, in
 
 Essary,
 
 the undisputed testimony showed that the defendant did, at a minimum, come to a rolling stop suggesting that he did not simply ignore his legal duty to yield to traffic. Pennington made no such attempt to stop but raced through the median demonstrating a conscious disregard of a known duty. A reasonable jury could find that Pennington acted consciously. Third, unlike the facts in
 
 Essary,
 
 a jury could find that Pennington’s judgment was affected because he was on a personal errand while at work.
 

 “Chris Beck, an eyewitness, testified that Pennington did not stop in the median. After racing through the median, Pennington just narrowly missed colliding with Beck’s truck.... Pennington has failed to explain how he missed see
 
 *1261
 
 ing two large trucks. Even by his own testimony, Pennington had a clear line of sight for 500 feet in the direction of oncoming eastbound traffic. But Pennington provides no explanation as to why he did not see the two trucks that were almost in the intersection in front of him. A reasonable inference drawn in favor of [Robert and Sharon] is that Pennington did see the trucks and made the conscious decision to attempt to cross the intersection. Alternatively, a reasonable inference is that Pennington made the conscious decision to cross the highway without even checking for oncoming traffic in the eastbound lanes of the highway.
 

 [[Image here]]
 

 “Pennington’s failure to yield the right-of-way violated the Rules of the Road. Section 32-5A-114 of the Alabama Code required Pennington to yield the right-of-way to the traffic on Highway 84. If Pennington did not see the trucks, he breached his duty to keep a lookout for other vehicles on the road. Pennington admitted that pulling out in front of a vehicle would place his passengers at risk for injury. He also admitted that attempting to cross a highway without making sure the lanes were clear would be dangerous.”
 

 (Footnotes omitted.)
 

 Following a hearing, however, the trial court entered a judgment granting Pennington’s summary-judgment motion with respect to both the negligence claim and the wantonness claim. Regarding the wantonness claim, the trial court stated:
 

 “The remaining issue is [Pennington’s] Motion for Summary Judgment on [Robert and Sharon’s] wantonness claim. The Court has carefully reviewed the evidence submitted by the parties with a view most favorable to [Robert and Sharon]. [Pennington] testified at his deposition that his foot slipped off the brake pedal just prior to the wreck ... and that he then ‘looked and saw that I would have enough time from the traffic that I saw.... That I would have enough time to get across.’ ... He further stated that he never saw the truck that hit him.... Based on this evidence, [Pennington’s] conduct is simple negligence under Alabama law.
 

 “However, [Robert and Sharon] also offer the eye-witness testimony, by affidavit, of Chris Beck. Although eonclu-sory, but accepted by the Court as truthful and in a light most favorable to [Robert and Sharon], Mr. Beck states that, ‘It appeared to me that [Pennington] was trying to race across four lanes in an attempt to beat the oncoming traffic.’
 

 “The Court believes that this case is controlled by the ease of
 
 Ex parte Essary,
 
 992 So.2d 5 (Ala.2007). The essential holding of
 
 Essary
 
 is that an attempt to ‘beat the traffic’ cannot rise beyond negligence and become wanton or reckless conduct without additional aggravating circumstances. ‘At best, the plaintiffs’ evidence shows that Essary ... made an error in judgment when he attempted to “beat the traffic”.... ’ In the present case the most favorable evidence available to [Robert and Sharon] (the affidavit of Chris Beck) is that [Pennington] was attempting to ‘beat the traffic’ when the wreck occurred.
 

 “[Robert and Sharon’s] position tracks the argument made by the Chief Justice in her dissent in
 
 Essary
 
 that the jury should consider the total circumstances on a ‘beat the traffic’ lawsuit on whether the Defendant has the requisite mental state to justify a wanton conduct claim. Likewise this Court is uncomfortable in having to rule on a party’s mental state or awareness on a ‘beat the traffic’ case.
 
 *1262
 
 Nonetheless, the Court is unable to read
 
 Essary
 
 in any way other than establishing a rule that a Plaintiff must offer additional aggravating evidence to withstand summary judgment on a wantonness claim based on ‘beating the traffic.’
 

 “Accordingly, [Pennington’s] Motion for Summary Judgment is GRANTED.”
 

 Robert and Sharon timely appealed to the supreme court on September 23, 2010, and the supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Analysis
 

 Robert and Sharon first argue that the trial court erred in granting Pennington’s summary-judgment motion with respect to the wantonness claim because, they say, the case now before us is distinguishable from
 
 Essary.
 
 They argue that, in the case now before us, there is evidence indicating that Pennington was conscious that harm would likely or probably result from his attempting to beat the oncoming traffic whereas, in
 
 Essary,
 
 there was no such evidence.
 

 The supreme court summarized the factual background and procedural history of
 
 Essary
 
 as follows:
 

 “On the evening of May 22, 2002, Es-sary was driving west on McPherson Landing Road in Tuscaloosa County. Essary reached the intersection of McPherson Landing Road and Highway 69, where a stop sign obligates the westbound traffic on McPherson Landing Road to stop and yield to traffic traveling north and south on Highway 69. There are no stop signs halting traffic traveling on Highway 69. As Essary proceeded through the intersection, his vehicle collided with a vehicle traveling north on Highway 69 that was being driven by Latrice Burrell and occupied by Irene Banks and Loretta Pratcher.
 

 “On August 31, 2004, Burrell, Banks, and Pratcher sued Essary and his automobile insurer in the Hale Circuit Court to recover damages for negligence, wantonness, and trespass. The case was later transferred to the Tuscaloosa Circuit Court.
 

 “Essary moved for a summary judgment, asserting that the negligence claim was barred by the applicable statute of limitations and that his conduct did not constitute either wantonness or a trespass. Essary supported his motion with, among other things, his deposition and the depositions of Burrell and Banks. Essary testified in his deposition that he did not see Burrell’s vehicle when he entered the intersection. Bur-rell’s deposition testimony indicated that Essary made a ‘rolling stop’ at the intersection and that he then pulled out in front of the vehicle she was driving. Essary argued in his motion for a summary judgment that
 

 “ ‘the evidence indicates at most that [Essary] made a “rolling stop” and failed to yield the right-of-way. [Es-sary], without dispute, testified that he looked both ways before entering the intersection and did not see [Bur-rell’s] vehicle approaching. He testified that he may have failed to see [Burrell’s] vehicle due to the artificial lighting along the highway. There is no evidence that [Essary] was drunk, intoxicated, that he was conscious that [Burrell’s] vehicle was near or that a collision was about to occur. That is, there is no substantial evidence that [Essary’s] conduct rose to the level of wantonness, as that term is defined in Alabama.’
 

 “In opposition to the summary-judgment motion, the plaintiffs submitted, among other things, an affidavit by Bur-rell, in which she stated that, in her ‘opinion,’ Essary came to ‘rolling stop’ at
 
 *1263
 
 the intersection and, after a vehicle being driven by Erica Banks passed the intersection, accelerated into the intersection as he passed the stop sign. Bur-rell stated: ‘In my opinion, he was attempting to “shoot through the gap,” between the lead vehicle and the vehicle I was driving.’
 

 “After a hearing on the motion, the trial court entered a summary judgment in favor of Essary on all claims. The trial court held, among other things, that there was no substantial evidence of wanton conduct. The trial court subsequently denied a postjudgment motion by the plaintiffs, who then appealed to this Court. We transferred the case to the Alabama Court of Civil Appeals pursuant to Ala.Code 1975, § 12-2-7(6). The Court of Civil Appeals affirmed the trial court’s judgment on the negligence claim and the trespass claim, but reversed the trial court’s judgment on the wantonness claim, holding that the plaintiffs had established a genuine issue of material fact regarding whether Essary had acted wantonly.
 
 Burrell v. Essary,
 
 [992 So.2d 1 (Ala.Civ.App.2006) ]. Specifically, the Court of Civil Appeals held:
 

 “ ‘Burrell’s testimony regarding the circumstances of the collision conflicted with Essary’s testimony and tended to prove a set of circumstances from which a jury could draw a “reasonable inference” that Essary knew that the vehicle driven by Burrell was close to the intersection when he accelerated into the intersection despite being aware that his doing so would likely or probably result in injury to the plaintiffs.’
 

 “992 So.2d at 5. Essary filed an application for rehearing, which the Court of Civil Appeals overruled. He then petitioned this Court for certiorari review alleging, among other things, that the Court of Civil Appeals’ decision conflicted with
 
 Wilson v. Cuevas,
 
 420 So.2d 62 (Ala.1982). See Rule 39(a)(1)(D), Ala. R.App. P. We granted the petition, and we now reverse the part of the judgment of the Court of Civil Appeals that reversed the trial court’s judgment on the wantonness claim and render a judgment in favor of Essary on that claim.”
 

 992 So.2d at 7-8.
 

 Explaining its rationale for holding that Essary was entitled to a summary judgment with respect to the wantonness claim, the
 
 Essary
 
 Court, in pertinent part, stated:
 

 “ ‘Wantonness’ has been defined by this Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions
 
 and
 
 being conscious that, from doing or omitting to do an act, injury will likely or probably result.
 
 Bozeman v. Central Bank of the South,
 
 646 So.2d 601 (Ala.1994). To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone.
 
 Joseph v. Staggs,
 
 519 So.2d 952, 954 (Ala.1988). Also, it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is ‘conscious’ that injury will likely or probably result from his actions.
 
 Id.
 
 ‘Conscious’ has been defined as ‘ “perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception” ’; ‘ “having an awareness of one’s own existence, sensations, and thoughts, and of one’s environment; capable of complex response to environment; deliberate.” ’
 
 Berry v. Fife,
 
 590 So.2d 884, 885 (Ala.1991) (quot
 
 *1264
 
 ing
 
 Webster’s New Collegiate Dictionary
 
 239 (1981) and
 
 The American Heritage Dictionary of the English Language
 
 283 (1969), respectively).
 

 “Additionally, when determining if a defendant’s actions constitute wanton conduct, it is important for the court to distinguish between wantonness and negligence.
 

 “““Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger,
 
 or with consciousness, that the doing or not doing of some act will likely result in
 
 injury....
 

 “““Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as ... a conscious ... act. “Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.”
 
 McNeil v. Munson S.S. Lines,
 
 184 Ala. 420, [423], 63 So. 992 (1913)....””
 

 “Tolbert v. Tolbert,
 
 903 So.2d 103, 114-15 (Ala.2004) (quoting
 
 Ex parte Anderson,
 
 682 So.2d 467, 470 (Ala.1996), quoting in turn
 
 Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.,
 
 510 So.2d 142, 145-46 (Ala.1987)) (emphasis added).
 

 “The determination whether a defendant’s acts constitute wanton conduct depends on the facts in each particular case.
 
 Ex parte Anderson,
 
 682 So.2d at 470. In support of his motion for a summary judgment, Essary submitted his deposition and the depositions of Burrell and Irene Banks. In his deposition, Essary testified that he drove on McPherson Landing Road frequently and that he was familiar with the intersection where the collision occurred. Essary stated that on the evening of the accident he was traveling west on McPherson Landing Road because he wanted to go to a convenience store to purchase cigarettes. Essary also testified that, as he approached the intersection, he came to a full stop, checked the traffic on Highway 69 in both directions, and did not see any vehicles coming from either the north or the south on Highway 69. Essary then drove out into the intersection, where his vehicle collided with Burrell’s.
 

 “In her deposition, Burrell described the accident as follows:
 

 “ ‘[Essary’s counsel:] Okay. All right. I want you to tell me then what happened then, from the time you saw [Essary’s] car for the first time until the wreck happened.
 

 “ ‘[Burrell:] I was riding behind [Erica Banks’s sport-utility vehicle]. [Pratcher] saw the car first and she was starting to tell me that she didn’t think that [Essary’s] car was going to stop at the stop sign. We were driving and [Banks’s sport-utility vehicle] passed the intersection. And [Es-sary’s car] ... was approaching the intersection....
 

 [[Image here]]
 

 “ ‘... He rolled up to the stop sign, but he never came to a complete stop.
 

 [[Image here]]
 

 “ ‘... And by the time that I realized he wasn’t going to stop, I threw on the brakes, but I knew I was going to hit him. It was too late.
 

 “‘[Essary’s counsel:] So it sounds like you’re describing a car that
 
 *1265
 
 maybe slowed down but didn’t make a full stop.
 

 “ ‘[Burrell:] Yes.
 

 “‘[Essary’s counsel:] Made kind of what you call a rolling stop; is that what you’re saying?
 

 “ ‘[Burrell:] Yes.’
 

 “Additionally, Burrell stated in an affidavit:
 

 “ ‘Mr. Essary appeared, in my opinion, to come to a rolling stop, wherein he observed the lead vehicle containing Mrs. Erica Banks which was right in front of the vehicle I was driving. As he observed Mrs. Banks drive by, he did not stop, but actually accelerated just as he passed the stop sign. In my opinion, he was attempting to “shoot through the gap,” between the lead vehicle and the vehicle I was driving.’
 

 [[Image here]]
 

 “The evidence, viewed, as it must be, in a light most favorable to the plaintiffs, the nonmovants, shows that Es-sary slowed to a ‘rolling stop’ at the intersection and attempted to cross the intersection between two moving vehicles. The plaintiffs’ characterization of Essary’s attempt to cross the intersection between two vehicles as ‘accelerating’ after a ‘rolling stop’ to ‘shoot the gap’ does not elevate Essary’s actual conduct — as observed by the plaintiffs— from the negligent failure to exercise good judgment to a wanton act constituting reckless indifference to a known danger likely to inflict injury. At best, the plaintiffs’ evidence shows that Es-sary, like the defendant in
 
 Wilson,
 
 made an error in judgment when he attempted to ‘beat the traffic’ or ‘shoot the gap’ by passing between Banks’s vehicle and Burrell’s vehicle.
 
 Wilson
 
 holds that such conduct is not wanton.
 

 “Although the evidence indicates that Essary knowingly entered the intersection, there is nothing from which the trier of fact could infer that, in moving his vehicle through the intersection, Es-sary’s state of mind contained the requisite consciousness, awareness, or perception that
 
 injury was likely
 
 to, or
 
 would probably, result.
 
 Indeed, the risk of injury to Essary himself was as real as any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior. See
 
 Griffin Lumber Co. v. Harper,
 
 252 Ala. 98, 95, 39 So.2d 899, 401 (1949) (‘There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death.
 
 Atlantic Coast Line R. Co. v. Wetherington, 2
 
 45 Ala. 313(9), 16 So.2d 720 [(1944)].’).
 

 “The facts here presented do not establish any basis from which to conclude that Essary was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. Nor is the act as described by Burrell so inherently reckless that we might otherwise impute to Es-sary a depravity consistent with disregard of instincts of safety and self-preservation. We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that Essary was conscious that injury would
 
 *1266
 
 likely or probably result from his actions.”
 

 992 So.2d at 9-12.
 

 In the case now before us, the undisputed evidence established that Pennington stopped at the stop sign located at the edge of Domino’s parking lot and let several automobiles pass before beginning to cross Highway 84. The evidence was in conflict regarding whether Pennington stopped in the paved gap in the concrete median before attempting to cross the eastbound lanes; however, for purposes of reviewing a summary judgment, we must view that conflicting evidence in the light most favorable to Robert and Sharon. Hence, for purposes of reviewing the summary judgment, we accept Beck’s testimony that Pennington did not stop in the paved gap in the concrete median and that he appeared to be attempting to beat the oncoming traffic. Nonetheless, we And that the trial court did not err in holding that, under the supreme court’s decision in
 
 Essary,
 
 Pennington was entitled to a summary judgment with respect to the wantonness claim. In
 
 Essary,
 
 the facts, viewed in the light most favorable to the plaintiffs, indicated that the defendant made a “rolling stop” and then attempted to beat the oncoming traffic. In the case now before us, the facts, viewed in the light most favorable to Robert and Sharon, indicate that Pennington made a complete stop at the stop sign located at the edge of Domino’s parking lot and then tried to beat the oncoming traffic. It appears that, in the case now before us, Pennington had to cross a greater distance in order to beat the oncoming traffic than Essary did; however, as was the case in
 
 Essary,
 
 there is no evidence in the case now before us indicating that Pennington was intoxicated or otherwise impaired and there is no evidence indicating that he was conscious that harm would likely or probably result from his attempting to beat the oncoming traffic. Therefore, we find no merit in Robert and Sharon’s argument that the case now before us is distinguishable from
 
 Essary.
 

 Robert and Sharon also argue that the case now before us is factually more analogous to
 
 Clark v. Black,
 
 630 So.2d 1012 (Ala.1993), a case in which the supreme court reversed a directed verdict in favor of the defendant with respect to a wantonness claim, than it is to
 
 Essary.
 
 In
 
 Clark,
 

 “[t]he evidence indicated that Black was traveling west on Union Chapel Road when she approached the intersection of Union Chapel Road and Watermelon Road. Black was familiar with the intersection, and she knew that a stop sign required traffic on Union Chapel Road to stop at the intersection. Traffic on Watermelon Road was not required to stop at the intersection, and there was a ‘hillcrest’ on Watermelon Road just north of the intersection that impaired visibility. As Black approached the intersection, she failed to stop, and she entered the intersection and collided with a motorcycle driven by the plaintiff, who was traveling south on Watermelon Road. Testimony at trial by an eyewitness to the accident indicated that Black was traveling at a ‘very fast speed.’
 
 Clark,
 
 630 So.2d at 1016.”
 

 Essary,
 
 992 So.2d at 12-13.
 

 The
 
 Essary
 
 Court distinguished
 
 Clark:
 

 “The instant case is distinguishable from
 
 Clark.
 
 The evidence in
 
 Clark
 
 indicated that the defendant knew of a particular danger at the intersection, that she was traveling at a high rate of speed, and that she ignored a stop sign. No such set of circumstances exist here. There is no evidence indicating that Es-sary was aware of any particular danger at the intersection of McPherson Landing Road and Highway 69, and he did not speed through the intersection while
 
 *1267
 
 ignoring the stop sign. Instead, Bur-rell’s testimony shows that when Essary reached the intersection, he slowed and made a ‘rolling stop.’ This testimony, unlike the eyewitness’s testimony in
 
 Clark,
 
 does not allow for the reasonable inference that Essary’s conduct was wanton.”
 

 992 So.2d at 13.
 

 In the case now before us, there is no evidence indicating that Pennington knew of a particular danger comparable to the hillcrest that was involved in
 
 Clark.
 
 Moreover, there is no evidence indicating that he ignored a stop sign — he obeyed the stop sign located at the edge of Domino’s parking lot and there is no evidence indicating that a stop sign was located at the paved gap in the concrete median. Finally, there is no evidence indicating that Pennington was traveling at a high rate of speed. Therefore, we find no merit in Robert and Sharon’s argument that the present case is more analogous to
 
 Clark
 
 than it is to
 
 Essary.
 

 Finally, Robert and Sharon argue that we should reverse the summary judgment with respect to the wantonness claim because, they say, a jury should decide whether, in light of all the circumstances, Pennington’s conduct was wanton. However, this is the same argument that was advocated by the dissent and rejected by the majority in
 
 Essary.
 
 Therefore, we cannot reverse the judgment of the trial court based on that argument.
 

 Accordingly, based on the decision of the supreme court in
 
 Essary,
 
 we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Section 32-1-2 provides:
 

 "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of the motor vehicle.”